## ALFRED TAYLOR

### *vs.*

## WILLIAM READ and FRANKLIN BARNES.

An action in the nature of an action of assumpsit, for money had and received may in general be sustained by showing that defendant has received money of the plaintiff, which, in equity and good conscience, he ought to pay over to the plaintiff; as, for instance, where he has received such money upon a consideration, which has failed.

Application of this doctrine to a case, in which plaintiff had paid to defendant money upon a verbal promise to convey real estate, which promise failed to be fulfilled without fault upon plaintiff's part.

*Bennett vs. Phelps,* 12 *Minn.,* 326, *followed.*

The plaintiff brought this action in the district court for Blue Earth county, to enforce the specific performance of an alleged contract of the defendants for the conveyance of certain lands described in the complaint, and to recover the consideration already paid by him, in case the defendants, for want of title, should be unable to convey. The action was tried by the court and a money judgment was ordered and entered for the plaintiff, from which judgment the defendants appeal. The findings in the court below are stated in the opinion.

BROWN & WISWELL, for Appellants.

SEVERANCE & DICKINSON, for Respondent.

Taylor v. Read et al.

*By the Court.*—BERRY, J.—This action was tried below by the court. The findings, so far as important, are as follows, viz. : " I find for facts, that, by a writing under date of November 11th, 1867, the defendant Read bargained to the plaintiff a certain farm and lands, including a piece therein described as ' fifteen acres which I purchased of Barnes,' being timber land. The plaintiff was to pay $2,000 for the whole ; but for the said fifteen acres, separated from the rest, $150. At the time of the bargain Read was sick, and Barnes, his son-in-law, who appears to have been cognizant of the trade, went and showed the plaintiff the fifteen acres, and verbally promised to convey it to the plaintiff, on being paid such sum as should be found due him on settlement with Read. In the ensuing fall, or winter, the defendants settled their accounts in presence of the plaintiff, and $74.47 was found owing from Read to Barnes, which the plaintiff kept to pay to Barnes for a warranty deed of the 15 acres. * * All the balance, which plaintiff had agreed to pay to Read, was then, or soon afterwards paid to him. Read never had any written contract with Barnes for the purchase of the 15 acres, nor does it appear how much he was to pay for it, or that he had ever paid anything towards it. He had taken all the saw-timber off it, and then desisted from cutting other timber because Barnes objected. Nor did Barnes ever give any writing to sell the land to plaintiff. Barnes did not have a clear title to it. He had a tax title, and a mortgage against the owner of the fee, which he did not foreclose until about the fall of 1868, and a year's redemption had not expired when he sold to Miles Porter. * * Sometime in 1868 he informed plaintiff that, if he did not pay him, he should sell the land, and did sell it to Miles Porter by writing, about January, 1869. * * * * As matters of law, I find, first, that the contract of Barnes to sell the 15 acres was void as to both Read and the plaintiff." Several

other conclusions of law are found, the sum and substance of which is, that the plaintiff is entitled to recover of the defendants Read and Barnes $75.53, being so much of the agreed price, ($150,) of the fifteen acres as the plaintiff had paid to Read.

This is an action in the nature of assumpsit, for money had and received, which may in general be sustained by showing that the defendant " has received    *    *    money of the plaintiff, which, in equity and good conscience, he ought to pay over to the plaintiff." 2 *Greenl. Ev.* § 117.

In this case there is no pretence that defendant Barnes has received any of the money of plaintiff, and there is therefore no ground for maintaining the action against him. The fourth finding of law of the court below, which is really a mixed finding of law and fact, is as follows, viz.: " That Barnes was cognizant of the trade between the plaintiff and Read, and promised to let the plaintiff have a warranty deed of the 15 acres, which proved a strong, if not the only inducement for the plaintiff to pay $75.53 to Read ; wherefore I think he is liable with Read to pay that sum to the plaintiff." As the court had before found that Barnes' said promise to the plaintiff was void, so that the plaintiff had no right whatever to rely upon it as a legal obligation, it is difficult, (to say nothing of other objections to the finding,) to see any foundation upon which the supposed liability of Barnes can be placed.

But as to Read the rule applies, that an action of this kind " may be supported by proof that the defendant has received money of the plaintiff upon a consideration which has failed," (2 *Greenl. Ev.* § 124,) and which, therefore, " in equity and good conscience, he ought to pay over to the plaintiff."

The money, ($75.53,) was paid to Read by the plaintiff, as part of the purchase price of the " fifteen acres," and upon the *basis* that a good title to the same was to be made to plaintiff

Taylor v. Read et al.

by Barnes.  For Read had *in* *writing* agreed to convey the " fifteen acres " to the plaintiff, and the arrangement, by which Barnes made his verbal, (though void,) promise to convey to plaintiff, was to carry out Read's written agreement.  Although Barnes' verbal promise was void, as the court finds, that is to say not enforceable by plaintiff, still Barnes could, if he saw fit to do so, (and if he had title,) convey to plaintiff pursuant to his verbal promise.  That he would do so Read was, (by his written contract with the plaintiff, and the subsequent arrangement found by the court,) so far at least responsible that, if he (Barnes) failed to convey, there would be a failure of consideration for the money which had been paid to Read on account of the " fifteen acres," Read being upon the facts found so far identified with Barnes that the failure of the latter to perform his promise would be Read's failure also.

Barnes never had a good title to the fifteen acres; and there is no presumption that he ever would have had such title, so as to be able to fulfill his promise.  But aside from this, when Barnes disabled himself from acquiring title and fulfilling his promises, by parting with all the interest which he had, and disposing of the inchoate title, (if such it may be called,) which might ripen into a good title, and especially when this was done, as his own record admission (in his answer) shows, and as the court finds, in repudiation of his promise to the plaintiff, the failure of consideration was beyond all question complete.  *Heard v. Bowers*, 23 *Pick.* 460.  The plaintiff was under no obligation to pay Barnes the money except for a good title.  Barnes not having a good title, and having parted with the interest which he had, under the circumstances above mentioned, no tender was necessary to perfect plaintiff's right of action  *Bennett vs. Phelps*, 12 *Minn.* 326.  At the time, then, when Barnes repudiated his promise to plaintiff as above seen, if not before, Read was a person who had received

money of the plaintiff upon a consideration, which had failed without fault on plaintiff's part, and which Read was therefore bound in equity and good conscience to pay over to plaintiff. *Bennett vs. Phelps, supra.*

The judgment appealed from is therefore reversed as to Barnes, and affirmed as to Read.