## IVER E. SHELLY vs. MADS MIKKELSON.

Opinion filed April 11th, 1895.

### Bond for Deed—Suit Upon Purchase Money Notes after Conveyance of Land.

Plaintiff sold real estate to the defendant, and received defendant's two promissory notes, due, respectively, in one and two years, for the purchase money. At the same time, plaintiff executed and delivered to defendant a bond for a deed, binding himself or his assigns to convey the land to the defendant upon full payment of the purchase money according to the terms of the notes. The bond was duly recorded. About the time the note last falling due matured,—no action having been brought on the first note, and time not being of the essence of the contract,—the plaintiff, without tendering a deed of conveyance to the defendant, sold and quitclaimed the land to one Percival; and the latter, prior to the commencement of this action, sold and conveyed the land to the defendant, who still owned the land at the time of the trial of this action. Plaintiff, when he quitclaimed to Percival, did not turn over the notes but retained possession thereof, and brought this action upon said notes. Upon this state of facts appearing in evidence, the trial court directed a verdict for the plaintiff for the amount of the notes, with interest. *Held* error.

### Action for Specific Performance.

*Held,* further, that the action which was tried as an action at law was essentially an action in equity for the specific performance of a contract to convey land brought by the vendor. In such cases the vendor must either tender a conveyance before suit, or be in such a position with reference to the land that he can be compelled by a decree to perform his part of the contract. When not so compellable, the plaintiff cannot recover.

### Note and Bond for Deed One Indivisible Contract.

*Held,* further, that after both notes had fallen due, neither having been sued independently, or transferred, the notes and bond for a deed became essentially one indivisible contract, and must be construed together, as a single contract embracing mutual and dependent covenants.

### Abandonment of Contract Presumed from Transfer of Land.

*Held,* further, that the defendant has a right to assume, *prima facie,* and act on the assumption, that the plaintiff, who transferred the land to a stranger without tendering a conveyance to the defendant after the debt matured, intended thereby to abandon the contract on the plaintiff's part, and turn over to his grantee all of his rights and obligations growing out of the land contract, and the trust relation created by it, and that if the defendant then, in good faith, purchased of the plaintiff's grantee, and obtained title from him, without any notice that the plaintiff had reserved the right to recover the purchase money, the plaintiff could not recover the purchase money from the defendant, even if

the right to recover the purchase money had in fact been reserved, as between
the plaintiff and his grantee.

CORLISS, J., dissenting.

Appeal from District Court, Ramsey County; *Morgan*, J.

Action by Iver E. Shelley against Mads Mikkelson. Judgment
for plaintiff, and defendant appeals.

Reversed.

*M. H. Brennan*, for appellant.

*Cowan & Denoyer*, for respondent.

WALLIN, C. J.   The principal facts in this case, appearing of
record, may be condensed as follows:   On January 20, 1890, the
plaintiff sold to the defendant certain real estate, which was then
incumbered by a mortgage, and received as consideration for
such land the defendant's two promissory notes, falling due,
respectively, on December 15, 1890, and December 15, 1891.
The contract of sale was reduced to writing, in the form of a
bond for a deed, which was duly recorded on September 7, 1890,
and was in the following language:   Know all men by these
presents that Mads Mikkelson, of De Groat, in the County of
Ramsey and Territory of Dakota, is held and firmly bound unto
I. E. Shelly in the sum of three hundred and four and 38-100
dollars, lawful money of the United States, to be paid unto I. E.
Shelly, his heirs, executors, administrators, or assigns, for which
payment well and truly to be made he binds his heirs, executors,
and administrators firmly by these presents.   Whereas, the said
I. E. Shelly has this day bargained and sold unto the said Mads
Mikkelson, his heirs, executors, and assigns, a certain lot or
parcel of land, situate, lying, and being in the County of Ramsey
and Territory of Dakota, designated and described as follows, to-
wit, the north half of the southeast quarter of southeast quarter
of section eleven, and the northeast quarter of the northeast
quarter of section fourteen, in township one hundred and fifty-six
north, of range sixty-five west:   Now, therefore, the condition
of this obligation is such that if the said I. E. Shelly, his heirs,

executors, administrators, or assigns, make, execute, and deliver a good and sufficient warranty deed, with full covenants, except as to such incumbrances as may arise by virtue of any tax assessed subsequent to the execution of this instrument, and a first mortgage of $275 and interest now on the land, and tax of 1889, of the above-described premises, upon being paid the full sum of three hundred and four and 38-100 dollars, according to the conditions of the two notes, one for $154.38, due December 15th, 1890, and one note for $150, due December 15th, 1891, both notes bearing dates the 20th day of January, 1890, and 10 per cent. int., or when he has broken 80 acres on the land, and secured said notes with mortgage on crop for 1891 on said land, bearing even date herewith, then this obligation to be null and void, otherwise to remain in full force and virtue. In testimony whereof, I have hereunto set my hand and seal this 20th day of January A. D. 1890. I. E. Shelly. [Seal.]" This action is upon said promissory notes, and was not instituted until after both notes had matured, by their terms. The plaintiff prays only for a money judgment, and does not set out in his complaint any ground authorizing the intervention of a court of equity. Defendant, by his answer, admits the execution and delivery of the notes, and alleges a failure of consideration as a defense. A copy of said bond for a deed is annexed to and made a part of the answer, and the answer further alleges "that defendant went into possession of said land under said arrangement, and broke and cultivated thereon 80 acres, and improved said land to the amount of four hundred dollars; that all of said acts were done prior to the commencement of this action, and prior to March, 1892; that defendant has demanded of plaintiff a full and faithful performance of the conditions of said bond, and offered to do what he (defendant) was required to do by the terms thereof, but that plaintiff has neglected and refused to execute to defendant said warranty deed for said land; that prior to the commencement of this action, and prior to March 1, 1892, the said plaintiff conveyed and transferred said land, by quitclaim deed, to John

A. Percival, and that thereafter, and prior to the commencement of this action, defendant, in order to protect himself, and save to himself the benefits of his improvements on said land, was obliged to purchase said land from John A. Percival; the consideration for said notes has wholly failed; that by reason of said transfer of land to said Percival, and by reason of the fact that since prior to March 1, 1892, plaintiff has not be able or willing to comply with the term of said bond, and has made it impossible for him to comply therewith." The case was tried before a jury, and at the close of the testimony the court directed a verdict for plaintiff, and a verdict was accordingly returned for plaintiff for the amount of both notes, with interest.

At the trial the following facts were made to appear: Plaintiff rested his case after putting the notes in evidence, and testifying that he owned the notes, and they had never been paid. The bond for a deed was also put in evidence. Defendant testified that in the year 1890 he entered upon the land under the contract and broke and backset 80 acres thereof, and raised a crop thereon in 1891. The plaintiff tendered a deed of warranty to the defendant some time after the breaking was done, in 1890, and offered to deliver the deed on condition that defendant should execute a crop mortgage on the crop to be grown in 1891 as security for the purchase-money notes. Defendant refused to do so, and plaintiff never delivered a deed to defendant, and never at any time tendered defendant a deed after both notes fell due. Defendant testified that he was at the time of the trial the owner of the land, and had purchased it, about one year prior to the trial, of one Percival. He was asked, "How much did you pay for the land?" Plaintiff, by his counsel, objected to this question on the ground that it was immaterial. The objection was sustained, and defendant excepted to the ruling. Defendant was asked: "Was there any other consideration for these notes, besides the land described in this bond for a deed? A. He says, 'No.' The consideration for the purchase of the land was six hundred and forty-four dollars, and a part of that was the two hundred and seventy-five

dollars, and he was to get a larger loan on the land, and through that indemnify himself." On plaintiff's motion, this answer was stricken out as unresponsible, and as immaterial and irrelevant, and defendant excepted to the ruling. Plaintiff was sworn as a witness for the defendant, and testified, in effect, that he never tendered a deed of the land to the defendant at any time after both notes matured. Plaintiff was asked: "Then, afterwards, without tendering to him any deed, you sold the land to another person, did you? A. I simply quitclained my interest. Q. You quitclaimed your interest? A. Yes sir. Q. You made a quitclaim deed? A. Yes, sir. Q. To whom. A. To John A. Percival." Plaintiff's counsel, on cross-examination, asking the following question: "Did you receive any consideration for this quitclaim deed you say you gave to John A. Percival?" Defendant objected upon the ground that the question was immaterial, and not proper cross-examination. The objection was sustained, and plaintiff excepted to the ruling. Plaintiff further testified that he gave the quitclaim to Percival either in November or December, 1891, or in January 1892; that he had, prior to the quitclaim, a good title to the land, subject to the first mortgage referred to in the bond; that the mortgage was foreclosed, and bought at the sale by one Wilmott, and the title was afterwards transferred to said Percival. There was no redemption from the mortgage sale. Plaintiff made the quitclaim to Percival after the latter acquired the interest obtained by Wilmott at the foreclosure sale, and some months prior to the expiration of the period allowed by law for redemption from such sale. In other words, the year had not run when the quitclaim was made by the plaintiff to Percival. It does not clearly appear whether the note last falling due had matured at the time the quitclaim to Percival was made. Percival executed and delivered to the defendant a quitclaim deed of the land, bearing date March 12, 1892, which deed recites on its face that it was given for a consideration of $600.

As we construe the bond, it gave the defendant an option. He

could not be compelled to close the transaction before the last note fell due, *i. e.* December 15, 1891; but defendant might require the plaintiff to deliver a deed prior thereto on performing the other conditions of the bond, *i. e.* on breaking 80 acres of the land in 1890, and by giving a chattel lien on the crop of 1891 to secure the notes. Defendant in fact broke the 80 acres in 1890, and thereafter plaintiff tendered him a deed of the land on the condition that defendant should execute a chattel mortgage on the crop of 1891, and upon the further consideration that defendant should execute a real-estate mortgage on the land to secure the notes. This the defendant refused to do, except that he did, for reasons not appearing in the record, make and deliver the required real-estate mortgage. At this point the defendant refused to give the chattel security, and the deed was not delivered to him by the plaintiff. The defendant, in our opinion, was fully justified by the agreement in refusing. Besides, the plaintiff appears to have exacted from the defendant, as a condition of delivering the deed, a real-estate mortgage. This was not a condition in the contract for delivering the deed. The defendant not having elected to comply with the option stated in the bond by giving security on the crop of 1891, and taking a deed at that time, the instrument must be construed independently of the option feature contained in it. Under the terms of the agreement, the plaintiff could have instituted an. action upon the note first falling due as soon as it matured, and without tendering a deed. The covenant to deliver a deed, and the cevenant to pay the first note, were independent covenants. *McCroskey* v. *Ladd*, 96 Cal. 455, 31 Pac. 558; *Beecher* v. *Conradt*, 13 N. Y. 108; *Eddy* v. *Davis*, 116 N. Y. 247, 22 N. E. 362. But this was not true with respect to the last note, which matured December 15, 1891. By the terms of the agreement the deed was to be delivered on payment of this last installment of the purchase money, and when this became due the agreement to pay the entire purchase money, and to deliver the deed, at once became mutual and dependent covenants. *Bank* v. *Hagner*, 1

Pet. 455; *Loud* v. *Water Co.*, 153 U. S. 564, 14 Sup. Ct. 928. In such a case, according to one class of cases, a tender before suit becomes necessary. Another class of decisions, however, hold— and we think this is the better rule—that the vendor·need not tender a deed before suit, and if plaintiff is able and willing to convey, and tenders performance after suit is brought, that this will answer, and the judgment will provide for the delivery of a deed concurrently with the payment of the purchase money. *Hogan* v. *Kyle*, 7 Wash. 595, 35 Pac. 399, and authorities above cited. Where the covenant to pay is independent, an action at law for the purchase price may be maintained; but, where the time for the delivery of the deed has arrived before suit is brought for the price, we think the only action which, on principle, can be maintained by the vendor, is one for specific performance. That such an action will lie is elementary. *Baumann* v. *Pinckney*, 118 N. Y. 604, 23 N. E. 916; *Rock Island Lumber & Manuf'g Co.* v. *Fairmont Town Co.*, (Kan. Sup.) 32 Pac. 1100; 22 Am. & Eng. Enc. Law, 947, and cases cited in note 7; Comp. Laws, § § 4627-4629, 4635. Under the weight of authority, after the time fixed for delivering a deed has arrived a suit for the purchase money is necessary, by an action in equity. *Johnston* v. *Wadsworth*, (Or.) 34 Pac. 13; *Hogan* v. *Kyle*, 7 Wash. 595, 35 Pac. 399; Warv. Vend. p. 961. In *Rindge* v. *Baker*, 57 N. Y. 209, the court says: "It is claimed that the present action is not an equitable one. The fact that it is brought for money is not decisive on that point. The real test in such an action is this: If it be brought for damages for breach of contract, it is a case at law. If it be brought for money, by way of a specific performance of a contract, it is a case in equity. Thus, where a vendor in a contract for the sale of land sues for the price, his action is equitable."

Both notes having matured before suit, the notes and bond must be construed together, and treated as one instrument, embracing mutual and dependant covenants, viz. a covenant to convey, dependent upon payment, and a covenant to pay, dependent on conveyance. *Hill* v. *Grigsby*, 35 Cal. 656; *Underwood* v.

*Tew*, (Wash.) 34 Pac. 1100; *Glassell* v. *Coleman*, 94 Cal. 260, 29 Pac. 508; *Divine* v. *Divine*, 58 Barb, 264; *McCroskey* v. *Ladd*, 96 Cal. 435, 31 Pac. 558. It is true that promissory notes, upon their face, import a consideration; hence the plaintiff, under a familiar rule, was enabled to make out a *prima facie* case by the introduction of the notes in evidence. Nevertheless, as we have seen, the vendor's action was in equity, for the specific performance of the contract on defendant's part. The action was not one for damages, but was brought by the vendor for the stipulated price after the time of delivering the deed had expired. True, the real character of the action was not revealed by the complaint, nor by the introduction of the notes in evidence; but when and as soon as it appeared that the notes were one feature only of the entire contract for the purchase and sale of land, the essential nature of the action became at once revealed. From the first the action was in equity, for the specific performance of a contract for the purchase and sale of real estate. If this were an action at law, the plaintiff would necessarily be cast in his suit, because it appears distinctly that the plaintiff did not tender a warranty deed after the purchase money became due. At law, the plaintiff must tender performance on his part before an action will lie upon the dependent covenant of the other party. This rule is strictly enforced in jurisdictions where the action by a vendor for the purchase money is regarded as an action at law. *Goodwine* v. *Morey*, 111 Ind. 68, 12 N. E. 82; *Undewood* v. *Tew*, (Wash.) 34 Pac. 1100. But, as already stated, we hold that the better doctrine is that this action is in equity, and in such actions the question of tender is important only in its bearing upon the question of costs. It is true that in contracts of sale, where time is of the essence of the contract, a failure to tender performance may defeat the action altogether, but otherwise not. *Freeson* v. *Bissell*, 63 N. Y. 168; *Bruce* v. *Tilson*, 25 N. Y. 194; *Railway Co.* v. *Crisolm*, (Minn.) 57 N. W. 63; *Lewis* v. *Prendergast*, 39 Minn. 302, 39 N. W. 802; 3 Pom. Eq. Jur. § 1407, note on page 453; Comp. Laws, § 4628. Under these authorities,

in a court of equity tender before suit is not vital to a recovery.

The action will lie if the plaintiff is compellable by the decree to carry out his part of the agreement; but in this case the plaintiff was wholly unable to give the defendant title to the land in question at the time suit was instituted or at the time judgment was rendered. Before instituting the action, plaintiff had parted with the land, and the defendant, after buying it from plaintiff's grantee, had received a deed from such grantee, several months prior to the bringing of this action.

But it does not necessarily follow from the fact that the plaintiff was unable to convey that he must go out of court. If the defendant, by any voluntary act, has caused the plaintiff's inability to convey, the defendant can derive no benefit or advantage from plaintiff's failure or inability to perform on his part. This rule is tersely expressed by § 3480, Comp. Laws, as follows: "If the performance of an obligation be prevented by the creditor the debtor is entitled to all the benefits which he would have obtained if it had been performed by both parties." The question is presented, therefore, whether the act of the defendant in obtaining a deed of conveyance of the land in question from the plaintiff's grantee (Percival) was of such a nature as to exonerate the plaintiff from giving the defendant title. In our opinion, this question must receive an affirmative answer. Turning to the condition in the bond, we ascertain that it was expressly stipulated therein that upon the payment of the purchase money, "if the said I. E. Shelly, his heirs, executors, administrators, or assigns, make, execute, and deliver a good and sufficient warranty deed," etc., "then this obligation to be null and void." The obligation bound the vendee, therefore, to accept a deed either from the plaintiff or his "assigns," as it might happen; in such a contract, the word "assigns," must be construed to mean "grantee." In effect, the writing made it obligatory upon the defendant, after paying the price, to receive a deed from either the plaintiff or his grantee as the case might be. The contingency of a transfer of the title by the vendor before the time of performance arrived had been anti-

.cipated by the parties, and expressly provided for by a stipulation whereby the vendee agreed to accept a conveyance from the grantee of the vendor as a full performance of the contracts on the part of the vendor. This consideration, therefore, is fatal to any claim which might be put forward on the vendee's part.that the transfer to Percival, followed as it was by a conveyance by the latter to the defendant, was in any sense a breach of the contract to convey title. On the contrary, such conveyance constituted a full and literal performance of the terms of the contract to convey the title of the land to the defendant. The defendant now has the title, and he received it from one of the sources agreed upon in the writing. Nor does the defendant complain that his title is imperfect, or different from that which the plaintiff bound himself to furnish. In brief, the defendant is entirely satisfied with his title, and does not ask for any further assurance of title, either from the plaintiff or from the court.

The bond was recorded, and was clearly entitled to record. It is an instrument which directly affects the title to real estate, and which, by a plain inference from its terms, relates to its possession also. Comp. Laws, § 3268. Furthermore, while there is no statute providing in terms that the recording of such instruments shall operate as constructive notice to the public of its contents, we are of the opinion that it should so be construed. By authorizing such instruments to be recorded, the legislature must have intended, we think, to protect the parties thereto, and those subsequently dealing with the land to which the instruments relate. *Case* v. *Bumstead*, 24 Ind. 429-432.

It follows that, in receiving a quitclaim deed of the land from Shelly, Percival took with contructive notice of all the rights and obligations springing from the contract of sale. He was chargeable with notice that prior to his purchase from S. the latter had sold the land to Mikkelson, and had bound himself and his assigns to convey the land to Mikkelson, with covenants of warranty, whenever and as soon as the stipulated purchase price of the land should be paid by Mikkelson. Hence Percival

received his title from Shelly burdened with the obligation of the trust to convey on payment of the purchase money. But to whom, under these circumstances, did the right to receive the purchase money belong? Or, in other words, to whom, after the land was conveyed by Shelly to Percival, was Mikkelson bound to pay the purchase money, as a condition of receiving title from Percival? He was bound, as has been said, under the contract, to take title either from his vendor, or any of his assigns. The title had been transferred, and was, when the money became due, vested in the grantee or "assigns" of the vendor. Shelly had not tendered the defendant a conveyance after the purchase money became due, and had, without such tender, quitclaimed to Pecival. Under such circumstances, we are of the opinion that the conveyance by Shelly to Percival (a stranger to the contract) was sufficient of itself, *prima facie*, to justify the defendant in assuming, in the absence of any other notice or kowledge, that Shelly had transferred to Percival, not only the legal title of the land, but all the rights and obligations incident to his trustee relation thereto, including the right to receive the purchase price which was to be paid as a condition of a conveyance to the vendee. True, the quitclaim did not, in terms, refer to either the bond or the notes; but this, we think, is unimportant, because the bond was on record, and the notes, having both matured, ceased to be independent obligations thereafter, and became a part of, and inseparable from, the bond. The question, as between Shelly and Percival, whether the latter acquired the right by his purchase to collect the purchase money, would depend upon the intention of the parties, and would not be determined by the delivery or nondelivery of the notes with the quitclaim deed. The bond advertised the fact that the purchase money was to be paid before the land was to be conveyed to the defendant. But the controversy does not arise between Shelly and Percival, and we are not, therefore, called upon to determine in this case whether the former did transfer to the latter, by the quitclaim deed or otherwise, the chose in action *i. e.* the right to collect the

purchase money, or whether that right was reserved to Shelly by some collateral agreement.

From our point of view, the crucial question is whether the defendant, on learning the fact that his vendor had conveyed the land to a stranger,—and having no notice of any collateral agreement or reservation, if any there was,—was justified in assuming from the fact of such conveyance, and from that alone, that Shelly had conferred upon his grantee all the rights, as well as all the obligations, arising from the trustee relation which Shelly sustained to the land, as springing from the contract of sale. In other words, in our opinion, the vendee was warranted in assuming from the fact of the conveyance that Percival was clothed by Shelly with authority to close up the deal. The question is one of considerable nicety, and we freely confess that our minds are not free from doubt as to its proper solution; but a majority of the members of this court hold that the facts justified the defendant in negotiating with Percival for the title, and in assuming that his obligations under the bond could be discharged by acquiring title to the land upon terms mutually satisfactory to Percival and himself. By one of the terms of the bond, the vendee might be required to accept the deed and personal covenants of a grantee of the vendor It seems a legitimate inference to draw from this stipulation that in a certain event the purchase money was to be paid to another than the vendor, *i. e.* that grantee of the vendor, who was vested with title when the purchase money became payable by the terms of the contract. We are unable to see how the words "or assigns," found in the condition of the bond, can weaken the natural inference to be drawn from the fact that the vendor of the land, without tendering a deed to the vendee, dispossessed himself of the title, and thereby disabled himself from performing the contract in his own person. The vendor did not repossess himself of title after his conveyance, and we are therefore of the opinion that his conveyance operated *prima facie* as an abandonment of the contract, so far as he was personally

concerned; and, in the absence of notice or knowledge to the contrary, we think the vendee was justified in assuming that the vendor had, so far as he was personally concerned, abandoned the contract, and turned over to Percival, his grantee, all of his rights and duties growing out of the trust. If the defendant, relying upon the appearance of abandonment created by the vendor's conveyance, has negotiated for the title with Percival, and in good faith paid Percival for the land, it would manifestly be inequitable to allow the plaintiff to recover. We think the authorities cited below will sustain our conclusions upon this point: *Sons of Temperance* v. *Brown*, 9 Minn. 157 (Gil. 144;) *Ten Eick* v. *Simpson*, 1 Sandf. Ch. 246; *Mackreth* v. *Symmons*, 15 Ves. 350; *Champion* v. *Brown*, 6 Johns. Ch. 403; 2 Story, Eq. Jur. § 784, and cases in note 3; *Burwell* v. *Jackson*, 9 N. Y. 535; *Wyvell* v. *Jones*, 37 Minn. 68, 33 N. W. 43; *Bennet* v. *Phelps*, 12 Minn. 326, (Gil. 216;) *Taylor* v. *Read*, 19 Minn. 372, (Gil. 317.)

It follows from the views we have expressed that the learned trial court erred in directing a verdict in favor of the plaintiff for the amount of the notes, with interest; and for this error the judgment will be reversed, and a new trial granted. We are also of the opinion that it was error to exclude evidence of what Mikkelson paid Percival for the land. The action was tried by a jury, and as a purely legal action, whereas, as has been shown, it is essentially an action in equity, for the specific performance of a contract for the purchase and sale of land. But no objection was made to the form of trial, and hence no reversible error can be predicated upon it in this court. In the event of a new trial the action should be tried by the court, and specific findings, upon all material facts should be made a part of the record. The fact should be found whether or not there was an agreement between Shelly and Percival that the right to recover the purchase money should be reserved to Shelly, and not transferred to Percival, and that Percival should convey the title so received to Mikkelson, on payment of the purchase price by Mikkelson to Shelly, and whether, if there was such an agreement made, that Mikkelson

had any notice or knowledge of the same at any time prior to obtaining title from Percival. If there was such a reservation of the right to recover the purchase money, and Mikkelson had notice thereof before closing the deal with Percival, the plaintiff should recover in this action. The mere fact that Mikkelson bought the title acquired by Percival through the foreclosure will not exonerate Mikkelson from the obligations assumed by him in the contract of sale. All matters, therefore, connected with the sale, as between the plaintiff and Percival, and as between the latter and the defendant, should be carefully investigated, and specific findings of fact made thereon.

Reversed, and a new trial ordered.

BARTHOLOMEW, J. (concurring.) I concur in the conclusion reached by the Chief Justice. I also concur in his reasoning. The exceptional facts in this case require the application of intricate, and perhaps not very well settled, legal principles. For this reason I desire to call attention, as briefly as may be, to the presence of certain facts in the record, as well as the absence of certain facts, that have influenced my mind somewhat in reaching my conclusion. It is a trite remark, but true, that the object of all litigation is to secure justice, and that the substance must never be sacrificed to the shadow. We must, if possible, so order that no wrong or injustice may be done in this case. I do not think that it is possible to do so, on the record as it now stands. The case was not closely tried. Many important matters are left uncertain which the parties had it in their power to make certain. Both parties are somewhat in default in that direction, but I attach more blame to plaintiff. While the record does not disclose his occupation, yet it shows him to be a business man. He testifies that he drew several of the conveyances which were introduced in evidence, and that he had prepared an application for defendant to sign in order to procure a loan upon the land, but which was never signed. It is evident that he fully understood the nature and legal effect of all ordinary conveyances. The defendant's occupation was that of a farmer. He

is a foreigner, and so poorly versed in the English language that he was obliged to testify through an interpreter. I deem it of importance to know the exact date of the quitclaim deed from the plaintiff Shelly to Percival. The last note given by defendant for the purchase price matured December 15, 1891. As stated by the Chief Justice, from that time the promise to pay and the promise to convey became interdependent. From that time the relations of the plaintiff and defendant were not different from what they would have been under an ordinary land contract wherein one party promises to pay upon receiving a conveyance, and the other promises to convey upon receiving payment. Should the grantor in such a contract subsequently quitclaim his interest in the land to a third party, his conveyance would constitute an assignment of his interest in the contract; and no lawyer would claim that he could thereafter sue upon the promise to pay contained in the contract, unless it clearly appeared from testimony that he reserved his right to the purchase money, and that the grantee in the contract knew of such reservation before he received and paid for a conveyance from the grantee in the deed. Nor would the sum paid for such conveyance in any manner concern the original grantor. These principals apply in full force, as against plaintiff, if his quitclaim to Percival was subsequent to December 15, 1891. He was asked to fixed the date, and, while he might easily have obtained it, he fixed it no more specifically than to say that it was in November or December, 1891, or January, 1892. Under these circumstances, I do not think it would be just to defendant, Mikkelson, to presume that it was prior to December 15, 1891.

Again, after the execution of the title bond, the relations of the parties were those of mortgagor and mortgagee. Jones, Mortg. § § 226, 1449, and cases cited. The plaintiff, Shelly, held the legal title, but only as security for the payment of the purchase money. I recognize fully the general doctrine that while a transfer of the debt carries with it the security, as an incident, an assignment of a mortgage does not necessarily carry with it the

debt. But I believe the authorities sustain the proposition that when the parties intended that the assignment of the mortgage should include the debt, and when no adverse interest will be affected, the courts will enforce such intention. In Jones on Mortgages (section 805,) it is said: "But the beneficial interest in the debt is, however, generally included in an assignment of the mortgage, although the terms of the assignment embrace the mortgage alone. This would be the presumed intention of the parties in all cases where the debt had not already been transferred to another, and an adequate consideration is paid." In *Philips* v. *Bank*, 18 Pa. St. 403, it is said: "The rule of common sense is the rule of law on this subject, and an assignment of the mortgage is an assignment, not only of the claim against the mortgagor, but of all the securities which the assignor may hold against him, or other parties, for the same debt." In *Olson* v. *Martin*, 38 Iowa, 347, it is said: "It is urged that the agreement or instrument in question provides only for the transfer to Morse of the mortgages, and makes no stipulation affecting the transfer of the notes; that the notes carry with them the mortgages, and the instrument, not showing the transfer of the notes, was not admissable in evidence. But certainly a contract for the transfer of a mortgage would be evidence of an intention to transfer the debt it was given to secure, and would establish such intention, in the absence of conflicting proof." In *Merritt* v. *Bartholick*, 36 N. Y. 44, a case which held that the transfer of the mortgage did not carry the debt, the court, in speaking on that point say: "So that, unless we are authorized to say that such was the intent of the parties, we cannot hold that it did." I think these authorities sufficiently show that an assignment of a mortgage does carry with it the debt, if such was the intent of the parties. This intent in this case, as in others, must be gathered from the attending facts and conditions. When these are sufficient to raise a presumption of such intent, there must be proof that such intent did not exist; and knowledge of that fact must be brought home to the mortgagor before he deals with the assignee, otherwise the

assignor should be bound. What were the attendant facts and circumstances in this case? Shelly held the legal title to the land. His beneficial interest in it consisted in his right to hold it as security for the payment of the purchase money. If, by his quitclaim to Percival, he conveyed the legal title only, he made his grantee a mere naked trustee, who could by no possibility receive any benefit from his purchase. This fact alone might not show the intent, but it has a bearing. The plaintiff, on the stand, in speaking of this transfer, says, "I simply quitclaimed my interest." That means his entire interest,—his beneficial interest. If the quitclaim simply empowered the grantee to hold the legal title for Shelley's benefit, *i. e.* until Shelly received the purchase money from defendant, then Shelly did not quitclaim his interest, but on the contrary he retained just the same beneficial interest that he held prior to the transfer. His own language contradicts any such reservation.

Again, Mikkelson purchased subject to an existing mortgage. Thereafter Shelly stood in the position of a junior incumbrancer. In the meantime the senior incumbrance had been foreclosed, and Percival held the certificate of sale. At the time Shelly quitclaimed to Percival, the year for redemption had not expired. It had not less than one or more than three months yet to run. The evidence leaves the exact time uncertain. Shelly might have redeemed from the foreclosure sale, and thus rendered his security good. He did not choose so to do. If no redemption from that sale was made, then Shelly's security became worthless. There were but two ways in which he could save himself,—one, by redeeming the land; the other, by selling his security before the time for redemption expired. He chose the latter. But it would aid him none to sell the naked legal title. That had no money value. If he desired to save himself, he must sell his beneficial and valuable interest. And I think that the time and circumstances of the sale, together with his own testimony, lead the mind, in the absence of all contradictory or explanatory evidence, irresistibly to the conclusion that he intended to sell, and

Percival intended to buy, plaintiff's beneficial interest in the land, and this necessarily included the debt for which he held the land as security. Had plaintiff been able to show that he received from Parcival but a nominal consideration, that fact would have had a tendency to show that it was not the intention to pass the beneficial interest or debt. But no such testimony was given. It is claimed, however, that defendant is not in a position to insist that plaintiff received a valuable consideration, because, when plaintiff, as a witness, was asked what consideration he received for the quitclaim, the court on defendant's objection excluded the question. But the fact that plaintiff received only a nominal consideration, if such be a fact, was one that it was necessary for plaintiff to establish, in order to recover. The defendant called plaintiff as a witness to prove certain formal matters, and, while thus on the stand, plaintiff was asked by his own counsel, on cross-examination, concerning the consideration. The counsel for defendant objected on the ground that it was not proper cross-examination. It would have been improper, I think, to have permitted the plaintiff to establish his own case on his cross-examination as a witness for defendant. He did not otherwise attempt to prove the consideration.

It is urged, also, that the fact that Mikkelson, when he finally purchased from Percival, did not receive his notes, was notice to him that the debt had not been transferred with the security. I readily admit that there is force in the suggestion, but I do not think it controlling. I can understand that Percival might well be indifferent about the notes. If he understood that the debt was transferred, he knew that under the terms of the bond he was perfectly secure. The land had been improved to the extent of $400 after the debts were incurred, and Mikkelson would be forced either to redeem from the foreclosure, and pay, under the provision of the bond, or subsequently purchase at Percival's own terms, in order to save his improvements. The notes were not material to Percival, and Mikkelson may well have supposed, when he purchased from Percival, that he extinguished the debt.

From that time forth he repudiated all liability on the notes. The bond recited that he should pay the purchase money to Shelly or his "assigns." Business prudence might have suggested the propriety of obtaining the notes, yet the fact that he failed to do so ought not, in my judgment, to deprive him of his defense. If Shelly sold the debt to Percival at such a price as he and Percival agreed upon, it would be highly inequitable to permit him to collect it again from Mikkelson; and if the debt was so transferred, or if Mikkelson believed it was so transferred, and in good faith dealt with Percival on that basis, then he ought not to be required to pay again. On the other hand, if the debt was not transferred, and if Mikkelson believed, or had good reason to believe, that it was not so transferred, the fact that he allowed the foreclosure to ripen into full title, and afterwards purchased such title from Percival, and now needs no further assurance of title either from Shelly or his "assigns," would not relieve him from his obligations to pay the debt contracted with Shelly, because it was his duty to take up the first mortgage, and see that it did not ripen into a title that would cut off Shelly's security. But, in my judgment, when the verdict was ordered the testimony did not establish this latter state of facts. For these reasons, also, I think the judgment must be reversed.

CORLISS, J. (dissenting.) While much that is contained in the prevailing opinions in this case meets my approval, I am compelled to dissent from the decision of the court in reversing the case. The ground on which this decision is placed is that Mikkelson was justified in assuming that the quitclaim had transferred to Percival the right to the purchase price represented by the two notes. In my opinion, this view of the case is unsound. It protects Mikkelson, despite his gross negligence. When he paid Percival for the deed, he was bound, as a prudent man, to ascertain whether Percival had a right to receive the purchase price. The mere fact that he was the grantee in a quitclaim deed would not, of itself, justify Mikkelson in assuming that Percival was also the assignee of the notes. It by no means follows, as a necessary

consequence, that one who has received the legal title from the vendor in a contract for the sale of real property is also invested with the right to the agreed purchase price. Certainly, the legal effect of a transfer of real property is not ordinarily to pass to the grantee a chose in action. Mikkelson was bound to know that the obligation to convey, and the right to receive the fruits of the conveyance, might part company; that there was no inflexible rule of law that they must forever remain inseparably bound up together. If the grantee of the vendor pays nothing for the property, there is no reason in equity why he should claim the right to receive the purchase price merely because he is the grantee in a deed. The circumstances surrounding this transaction indicated that Percival had not acquired Shelly's right to receive the purchase money. The deed was a mere quitclaim. It was executed after Percival had acquired an interest in the property under the foreclosure proceedings. These facts were sufficient to lead a careful man to inquire whether the parties had any other purpose than that of vesting in Percival the legal title which the foreclosure ultimately would give him. Moreover, errors in foreclosure proceedings are not unknown things, and quitclaim deeds are not infrequently given to obviate the legal consequences of such errors. But, even if the facts were different, Mikkelson could not deal with Percival on the theory that he was the owner of these notes, without making any inquiry whether he held them, or they were still in the possession of Shelly, and yet escape the charge of the grossest carelessness. If he went to Percival to demand a deed under the contract, he was bound, as a prudent man, to ascertain whether Percival owned the notes, before paying him the purchase price. It is true that the notes were mere representatives of the purchase price, but this is always the case. A note is only evidence of the obligation which lies behind it. But no one can escape the charge of gross inattention to his affairs who pays to one a debt represented by a note given to another, without ascertaining whether the debt has been transferred to the one to whom he pays it. The most satisfactory

evidence of such transfer is the possession of the note, and the
written evidence of the assignment of it.   If the necessary legal
effect of a deed, in such a case, were to vest the title to the pur-
chase price in the grantee, the case would be different.   But the
vendor's deed to a third person has no such necessary legal
effect.   In fact, the deed itself never transfers the right to the
purchase price.   It is the intent of the parties, as shown by their
conduct and by the circumstances of the transaction outside of
the deed; that works an assignment of the right to the purchase
money.   As I have stated before, the obligation to convey, and
the right to the purchase money, may part company.   They
always do when the vendor dies.   The naked legal title, burdened
with the trust in favor of the vendee, passes to the heirs at law.
The right to the purchase price vests in the personal representa-
tives.   The heirs must execute the conveyance, but the money must
be paid to the personal representatives.   *Thomson* v. *Smith*, 63
N. Y. 301-303; *Potter* v. *Ellice*, 48 N. Y. 323; 2 Story, Eq. Jur.
(13th Ed.) 111, 112.   It is true that our statute gives the personal
representatives the power to execute the conveyance, in such a
case.   But this does not affect the principal.   The obligation and
the right may be separated by the act of the vendor, as well as by
operation of law.   He may convey the naked legal title to one
person, and either retain himself the right to the purchase price,
or transfer it to another third person.   What right had Mikkelson
to assume that Shelly had transferred to Percival the right to
receive the amount due on these notes, when the notes were not
in the possession of Percival?   Mikkelson had expressly agreed
to pay these notes to Shelly on receiving a conveyance from him
or from his grantee.   He had agreed to pay them to Shelly on a
conveyance to him of the land by a grantee of Shelly.   He knew
that Shelly might convey the land subject to the obligation to
convey, and yet reserve to himself the right to the purchase
money.   He knew that Shelly had not transferred to Percival
either the notes or the contract, for what he could have ascer-
tained by inquiry he is charged with knowledge of, when he fails

to make such inquiry, it being his duty to make the same; and he also knew that all that Percival had was a mere quitclaim deed, whose utmost legal effect was to transfer the legal title to the land, and yet it is said that he was justified in assuming that he could safely pay the purchase price to Percival. Moreover, the opinion assumes that Mikkelson dealt with Percival under the contract, when it is obvious that in dealing with him he ignored the contract, and treated the act of Shelly in conveying to Percival as an abandonment thereof. This he had no right to do. From one portion of the opinion of the Chief Justice, I am led to believe that he agrees with me on this point. But in another part he seems to take the position that the conveyance to Percival was *prima facie* an abandonment of the contract by Shelly. Whatever might be the rule in a case, where the contract was silent on the subject, I am very clear that, under the language of the agreement in this case, Mikkelson had no right to infer from the conveyance to Percival any purpose on the part of Shelly to abandon the contract. Mikkelson had expressly agreed to accept a deed from either Shelly or his grantee. The very contingency of a transfer by the vendor before conveyance to the vendee was contemplated and provided for by the parties. For this reason a number of the authorities cited by the Chief Justice do not seem to be in point. I am unable to discover any force in the construction placed by Judge Bartholomew, in his opinion, upon the testimony of Shelly that he had merely quitclaimed his interest, as showing a transfer of the right to the purchase price. The word "interest" unquestionably refers to only the land. That he does not mean to testify that he assigned the right to the purchase price is made clear by his testimony that he had always been, and still was, the owner of the notes. His testimony would not be true if he had transferred to Percival the right to the purchase price, for such a transfer would, of itself, vest in Percival the title to the notes. It is possible that, when the purchase price is not evidenced by a note or notes, the conveyance of the land by the vendor to a third person would raise a

presumption that the vendor intended to transfer the right as well as the obligation. See, on this point, as favoring this view, *Sons of Temperance* v. *Brown*, 9 Minn. 157 (Gil. 144;) *Ten Eick* v. *Simpson*, 1 Sandf. Ch. 244; *Daniels* v. *Davison*, 16 Ves. 249, and 17 Ves. 433. But there are cases which seem to support the other view. *Chinn* v. *Butts*, 3 Dana, 547; *Lodge* v. *Lyseley*, 4 Sim. 70; *Whitworth* v. *Gaugain*, 3 Hare, 416; *Scott* v. *Coleman*, 5 T. B. Mon. 73; *Secombe* v. *Steele*, 20 How. 94-107. On this question, it is unnecessary to express any opinion. But when the purchase price is evidenced by notes which are not transferred, but retained by the vendor, the mere fact of a conveyance cannot create a presumption that the right to the purchase money has been assigned. And the vendee is not justified in drawing such inference when he knows that such notes have not been transferred. Such knowledge he is presumed to have when he blindly deals with a third person, making no effort to ascertain the fact. The mere circumstance that the notes are not surrendered to him is sufficient to put him on his guard. The rule is well settled that one who pays a note, without requiring surrender of the possession of it, cannot derive any protection from the payment, if at the time of payment the note had in fact been transferred to another. See *Kernohan* v, *Durham*, 48 Ohio St. 1, 26 N. E. 982, and cases cited. In view of such a rule, can it be said that the debtor can assume the fact of an assignment from the mere execution of an instrument whose legal effect is not to transfer the note, and, acting on such assumption, pay the debt to a person not entitled to receive it, without inquiring for the note, or ascertaining whether it has in fact been assigned, and then claim protection as one who has acted with reasonable prudence? The opinion of the Chief Justice exonerates the defendant from liability, although it is conclusively shown on the new trial that the right to the purchase price was not assigned to Percival, unless it can be proved, by some fact other than the retention of the notes by Shelly, that he (Mikkelson) had notice that Shelly had not transferred them to Percival.

I cannot assent to the reasoning of Judge Bartholomew that the poverty or ignorance of the defendant, or the shrewdness of the plaintiff, should influence us in the least. These questions are important when there is an issue of fraud or mistake or duress to be tried. But in this case we have merely a question of law, to decide. Rules of law cannot be adjusted to the varying faculties and attainments of men. There must be one law for all. In the administration of justice in the courts, ideal justice can never be attained. The most that can be hoped for is a reasonable approximation to it. That this practical justice may in the main be meted out, it is indispensable that the law should be stable. I believe that the practice of doing violence, however slight, to legal principles to accomplish justice in individual cases, has resulted in incalculable injustice to future litigants, by unsettling the law. From the two views that appear to be set forth in the opinion of my associates,—that the right to the purchase price was in fact transferred to Percival, and that Mikkelson was justified in assuming that it was so transferred,—I am constrained to dissent. I think that there was nothing in the case to warrant a finding that the right to the purchase money had been assigned to Percival and I also think that Mikkelson was not justified in assuming that this right had been so assigned. And, in addition, the case shows, to the satisfaction of my mind, that he did not act upon such assumption, but upon the theory that Shelly had abandoned the contract by conveying to Percival. My vote is for the affirmance of the judgment. I concur in the opinion of the Chief Justice in all respects except as I have otherwise indicated in this opinion.