CARL SEMMLER and SUSANNA SEMMLER, Respondents, v. BEULAH COAL MINING COMPANY, a corporation, et al., Appellants.

(188 N. W. 310.)

Vendor and purchaser — upon conveyance by quitclaim of interest in land contract, grantee secures right to enforce payment of unpaid purchase price.

1. Upon a conveyance by quitclaim of the right, title, and interest of a vendor in a land contract, the grantee therein secures all of the rights of the vendor including the right to enforce payment of the unpaid purchase price.

Vendor and purchaser — purchaser cannot void enforcement of installment payments on the ground that the holder of the sale contract is then unable to convey title as required.

2. In a land contract containing independent covenants for the payment, upon installments, of the purchase price and for the payment of taxes, the vendee, upon failure to perform such independent covenants, is not in a position to avoid proceedings to enforce the breach of such covenants upon the ground that the holder of the contract is then unable to convey title as required by the contract.

Vendor and purchaser — vendor's assignee of land contract held not required to be then able to perform by transferring title in action by vendee's assignee to quiet title.

3. Where the assignee of the vendee's land contract, in an action to quiet title, asserts that proceedings in cancellation of the contract for failure to pay installments of the purchase price and taxes, are invalid because the assignee of the vendor can not convey title by warranty as required by the contract, it is *held*, for reasons stated in the opinion, that the assignee of such vendee, at the time of the cancellation proceedings, was not required by the contract then to be able so to perform.

Opinion filed May 12, 1922.

Action in District court, Mercer county, *Pugh,* J.

Defendants have appealed from a judgment in favor of the plaintiffs.

Judgment reversed.

*Newton, Dullam & Young,* for appellants.

A contract of this character may be assigned by either party thereto in the absence of a covenant or stipulation to the contrary. 4 Cyc. p 20; 39 Cyc. p. 1663; 27 R. C. L. p. 560.

The vendor conveyed his interest in the land and assigned the contract of sale by transferring the legal title to H. H. Kenyon under the quitclaim deed in evidence. 39 Cyc. 663; 27 R. C. L. 560; Robertson v. Read, 52 Ark. 381; 14 S. W. 387; 20 A. S. R. 188.

The general principle in equity is that from the time the contract for the sale of land is entered into the vendor as to the land is a trustee for the purchaser and the vendee as to the purchase money is a trustee for the vendor, and every subsequent purchaser from either, with notice, is subject to the same equities as would be the party from whom he purchased. 1 Story Eq. Juris. §§ 396, 784, 789; Champion v. Brown, 6 Johnson Chancery 398; 10 A. D. 343; Wilkins v. Summerville, 66 Atl. 893, Vermont, 11 L. R. A. (N. S.) 1183; Veith v. McMurtry, Neb., 42 N. W. 6.

The plaintiffs cannot inquire into the sale and transfer of the land, and the assignment of the contract by the vendor. 39 Cyc. 1665; Watson v. Willard, 9 Pa. St. 89.

The purchaser assigned the contract and all of his interest therein to the First State Bank of Beulah to secure the payment of a certain note for $1000.00 due July 1st, 1916. This assignment was permissible according to well established principles. 39 Cyc. 1673; Braten v. Jones, 5 Wis. 117; Niggeler v. Maurin, 34 Minn. 118, 24 N. W. 379; Barrows v. Hoveland, 40 Nev. 464, 58 N. W. 947.

And such an assignment may be made even to the vendor. 39 Cyc. 1670.

*Sullivan, Hanley & Sullivan,* for respondents.

"Under a contract to execute and deliver or cause to be executed and delivered, a deed to land with covenants of general warranty, the vendor himself must unite in the conveyance and covenants." Armstrong v. Palmer (Tex.) 218 S. W. 627; Wolfore v. Jackson, 96 S. E. 237 (Va.); McVey v. Payne, (Ky.) 39 S. W. 419; Miner v. Hilton 44 N. Y. S. 155, 15 App. Div. 55.

The vendee in the contract was entitled to a deed conveying the personal covenant of warranty of the vendor, and the substitution of a third

person without his consent essentially varies the terms of the contract. Paul v. Shaw (Kan.) 119 Pac. 546; Ann. Cases 1913B 956 and note; McVeety v. Harvey Mercantile Co. 24 (N. D.) 249; Ann. Cas. 1915B 1037; Busswell v. O. W. Kerr Co. (Minn.) 128 N. W. 459; 21 Ann. Cas. 837.

## Statement.

BRONSON, J. This is an action to quiet title in certain coal lands. The salient facts are not seriously in dispute; largely, they are stipulated. They are as follows: Adjacent to the town site of Beulah, N. D., lie a fractional 80 acres of land, underlaid, for some 45 acres, with valuable lignite coal. On June 22, 1915, the owner thereof, one Juzeler, executed a contract for a deed therefor to Carl Semmler, the plaintiff. This contract expressed a consideration of $2,450, of which $105 was paid at the time of its execution. For the balance of the consideration, the contract provided annual payments thereafter covering a period of six years. The contract contained the usual provisions in case of default and prescribed that time was of the essence of the contract. Pursuant to this contract, Semmler entered into possession, sunk a shaft, installed certain mining machinery, and mining buildings. With this outfit he mined a quantity of coal on the premises. In accordance with his testimony the value of the improvements so placed by him upon the premises amounted to $8,600. On November 16, 1915, Semmler assigned his contract to the defendant First State Bank of Beulah. This assignment provided that it should be void if Semmler paid to the bank one note for $1,000 bearing even date therewith and due July 1, 1916. The money he received from the bank was invested in the mining property. Other moneys were advanced by the bank aggregating, in toto, $2,600, all of which were invested in mining improvements. Through such improvements, certain liens were created against the property. On June 16, 1916, Semmler quitclaimed his interest in the mining property to his wife.

On October 18, 1916, the First State Bank assigned its contract and its indebtedness against Semmler to one Mounts. The latter was then connected with a town-site company. He entered negotiations with the bank for the purpose of securing title to the property, understanding that the same was in the market and that the holder must relinquish his contract. He paid the bank $2,600 and interest; also, the liens against the premises. His total payments, so made, aggregated $4,600.

On February 7, 1917, Juzeler quitclaimed the land to one Kenyon, now deceased. Kenyon was then cashier of the First State Bank. No payments were ever made by Semmler upon the contract excepting the sum of $105. On February 14, 1917, Kenyon instituted statutory proceedings to cancel the contract for defaults of Semmler in failing to pay taxes and yearly payments stipulated in the contract. Pursuant to such proceedings, Kenyon declared the contract forfeited on March 19, 1917.

On August 3, 1917, Kenyon quitclaimed the land to the defendant coal company, which was then organized as a North Dakota corporation. Later, it reorganized as a Minnesota corporation with substantially the same stockholders, officers, and directors, taking over the property from its predecessor, the North Dakota corporation. Mounts, above mentioned, was and is the secretary of the coal company. He was reimbursed by the company for the payments made by him to the bank. Semmler ceased his mining operations on July 3, 1916, and since that time has not been in the actual occupancy of the land or the mine. The coal company, in August, 1917, commenced to improve the mining property. They have been in possession of the land ever since. Extensive improvements have been made aggregating about $200,000. This coal company has mined some 100,000 tons of coal upon this land. In March, 1917, Carl Semmler instituted an action against Kenyon to restrain the cancellation proceedings. Demurrer was interposed, to the complaint, by reason of failure to state a cause of action, and was sustained. Judgment, accordingly, was entered in June, 1917, dismissing such action. In July, 1920, this action was instituted by Carl Semmler and his wife to quiet the title in the land. Trial was had in April, 1921. The plaintiff then tendered the full amount due upon the contract. This tender was refused. Thereafter, in August and September, 1921, further evidence was taken. Plaintiff's testimony is to the effect that these lands were worth $27,000 when taken by the defendant. Testimony of the defendants on the contrary is to the effect that such lands, without the improvements, were not worth more than $30 per acre, and that plaintiff's improvements were not of any substantial value. The trial court made findings in favor of the plaintiff. These findings incorporated the undisputed facts above stated. The court finds specifically that plaintiff's improvements were worth $7,500; that the value of the use and occupation of the lands since August, 1917, is $10,000; that the value of the premises when taken by defendants was, and is now, $2,485. The trial court concludes that the contract was not legally canceled. This conclusion is based upon the

ground, as it appears from his memorandum opinion, that plaintiff was entitled to a deed containing the personal covenant by the vendor, and that Kenyon, who obtained his land from Juzeler on the quitclaim deed, was not entitled to receive forfeiture of the contract because he could not make conveyance in accordance with the terms thereof. The trial court ordered the defendants to pay the plaintiff $5,400 net, for use and occupation, and $11,000 for value of the land and improvements, if defendant desired to retain plain title, with certain other alternative provisions. Judgment was accordingly entered on December 6, 1921. The defendants have appealed.

## Decision.

Upon the record no questions of fraud are presented. No equitable considerations are presented to vacate or set aside the cancellation proceedings. As assignee of the vendee in the contract the plaintiff, the vendee's wife, asserts that the cancellation proceedings are invalid because the assignee of the vendor cannot convey title with personal covenant of warranty by the vendor, as required by the contract.

Upon the making of the contract for the sale of land, where the vendee takes possession, a relation more than personal is created between the parties. A privity of estate arises. In equity, an estate passes to the vendee. In equity, the estate is measurable as a fee subject to the vendor's lien. In equity, there exists an equitable conversion. Roby v. Bismarck Nat. Bank, 4 N. D. 156, 160, 59 N. W. 719, 50 Am. St. Rep. 633; Clapp v. Tower, 11 N. D. 556, 93 N. W. 862; Nearing v. Coop, 6 N. D. 345, 349, 70 N. W. 1044; Woodward v. McCollum, 16 N. D. 42, 49, 111 N. W. 623; Earley v. France, 42 N. D. 52, 57, 172 N. W. 73; Shelly v. Mikkelson, 5 N. D. 22, 36, 63 N. W. 210. In law, the vendor retains the legal estate, but, in reality through the interposition of equity, this legal estate is retained for purposes of enforcing the vendor's rights under the contract and the payment of the unpaid purchase price

This equitable estate possessed by the vendee may be sold and assigned in the absence of restriction in the contract. 39 Cyc. 1665; 27 R. C. L. 563. This right the vendee herein recognized. He assigned this right, first to the bank, for security; later, to his wife. This legal estate possessed by the vendor, and recognized in equity as a vendor's lien, may be conveyed or assigned. 39 Cyc. 1663; 27 R. C. L. 560. The vendor

herein recognized this right by conveyance to Kenyon, who later conveyed to the coal company.

The vendor's conveyance by quitclaim deed to Kenyon operated to transfer to Kenyon all of the vendor's right, title, and interest in the estate, at law, or in his vendor's lien, in equity. It thereby, gave to Kenyon all of the rights possessed by the vendor including the right to enforce the vendor's lien and collect the balance of the unpaid purchase price pursuant to the contract. 39 Cyc. 1664; 27 R. C. L. 560; Witt v. Boothe, 98 Kan. 554, 158 Pac. 851, 853; Greenfield v. Taylor, 141 Minn. 399, 170 N. W. 345.

In February, 1917, when cancellation proceedings were instituted, Kenyon, not the vendor, was then the person authorized to maintain the same. It was then the duty of the holder of the contract to pay the balance of the purchase price to Kenyon, the assignee of the vendor. Bldg. & Loan Ass'n v. Page, 46 W. Va. 302, 33 S. E. 336.

But it is contended that, since Kenyon received his right by quitclaim and not by warranty deed, he was not in a position to assure the contract holder of a conveyance to the vendee with warranty as required by the contract. This contention must be answered by considering the contract. The vendee therein agreed to make installment payments upon the purchase price annually, commencing in 1915 and ending on January 2, 1921. He further agreed to pay all taxes and assessments that might thereafter be levied or assessed upon the premises. The vendor agreed, upon prompt and full performance, to make conveyance; that warranty deed would be furnished upon full payment of the purchase price. All of these covenants by the vendee to make installment payments upon the purchase price and to pay the taxes and assessments were independent covenants excepting the covenant to pay the last installment of the purchase price or taxes and assessments that might then accrue or become due. These independent covenants of the vendee were not coincident and contemporaneous with the covenant of the vendor to convey by warranty deed. In February, 1917, the cancellation proceedings were instituted to cancel the contract for failure to pay installments upon the purchase price due in January, 1916, and in January, 1917, and for failure to pay taxes.

By the contract the vendee did not require that all of the covenants be coincident and contemporaneous. It was first the duty of the vendee to perform his independent covenants before he was placed in a position to demand performance by the vendor. Loveridge v. Coles, 72 Minn. 57,

64, 74, N. W. 1109; Diggle v. Boulden, 48 Wis. 477, 482, 4 N. W. 678. Accordingly, the independent covenants of the vendee, broken at the time of the cancellation proceedings, were not excused by the fact or the possibility of inability by the vendor or his assignee to then perform, at a time when performance was neither required nor demanded under the contract. Martinson v. Regan, 18 N. D. 467, 472, 123 N. W. 285; Golden Valley Land Co. v. Johnson, 25 N. D. 148, 160, 164, 141 N. W. 76; Shelly v. Mikkelson, 5 N. D. 22, 27, 63 N. W. 210; Townshend v. Goodfellow, 40 Minn. 312, 314, 41 N. W. 1056, 3 L. R. A. 739, 12 Am. St. Rep. 736; Easton v. Montgomery, 90 Cal. 307, 27 Pac. 280, 25 Am. St. Rep. 123; Gray v. Smith (C. C.) 76 Fed. 525; True v. N. P. Ry. Co., 126 Minn. 72, 77, 147 N. W. 948; Duluth Loan & Land Co. v. Klovdahl, 55 Minn. 341, 342, 56 N. W. 1119.

This is not an action for specific performance or for rescission, nor is it an action upon the covenants. It is an action to quiet title in an estate. The plaintiffs made no tender of performance at all until after the commencement of this action. They did not assert compliance with the contract. In fact, as far as the record discloses, the vendee in the contract paid only $105 thereupon. In the mine upon the property he invested to some extent his personal labor. Out of the mine, he took a quantity of coal. No equitable considerations are invoked. There is no proof in the record that Kenyon could not have performed as the contract required when performance came due. The question here is not the kind of title the vendee or his assignee is entitled to receive. Prior to the commencement of this action he made no tender nor any demand for any title. See Paul Co. v. Shaw, 86 Kan. 136, 119 Pac. 546, 37 L. R. A. (N. S.) 1123, Ann. Cas. 1913B, 956. The assignee of the vendee now demands her estate in the land without compliance with the contract and without the right of the vendor's assignee to enforce a compliance because the vendor has not tendered a warranty deed which, thus far, pursuant to the contract, it has not become his duty so to do.

The judgment must accordingly be reversed, and judgment entered dismissing the action. It is so ordered, with costs.

BIRDZELL, C. J., and ROBINSON, and CHRISTIANSON, JJ., concur.

GRACE, J. (dissenting). It is wholly unnecessary to enter upon any lengthy discussion of the matters presented in this case. If the attempt-

ed cancellation of plaintiff's contract with Juzeler was of no effect, the entire defense amounts to nothing. It is true that Juzeler conveyed the land to Kenyon, and while it is stated in the answer, in substance, that such conveyance was subject to the contract between Juzeler and Semmler, that statement is of little effect unless it should further appear by competent proof that Kenyon assumed and agreed in writing to carry out the terms of the contract between Juzeler and Semmler. There is no such proof in this record, and the presumption is that there is no such condition contained in the quitclaim deed from Juzeler to Kenyon, or that such a condition was otherwise assumed in writing. If there were no proper legal assumption of that contract by Kenyon, he had no right or authority to cancel it; he was a stranger to it. The covenants in that contract were personal between Juzeler and Semmler; and, unless Kenyon in some manner bound himself legally in writing to carry out Juzeler's covenants in the contract, he had no authority to serve notice of cancellation, as he had no contract relations with Semmler.

The second reason why the notice of cancellation of the contract amounts to nothing is that there were only two payments due on the contract at the time of the alleged default; one for $105, due January 2, 1916, and one for $448, due January 2, 1917. There were no provisions in the contract that when there was a default in failing to pay, when due, one or more of the payments, the whole sum of the payments could be declared due. Yet that is what the notice of cancellation did; this was not authorized by the contract, and Kenyon had no authority or power to declare due the whole of the payments stipulated. This alone was sufficient to prevent Semmler from making the redemption. Semmler might well be able to redeem the actual amounts due for which the notice of cancellation could have been legally served, where he could not redeem for the whole amount due on the contract, which without any authority was declared to be due. We think, therefore, the foreclosure proceedings of the contract were absolutely void, and that Kenyon got no additional rights thereby, nor did he succeed thereby in terminating the rights of Semmler to the land. The present suit is the only one where the merits of the controversy have been litigated. There is sufficient evidence to sustain the findings of the court and the judgment.

The plaintiffs in this action tendered the balance of the contract price remaining unpaid, the interest thereon, together with all taxes on the land. They have, therefore done full equity and are entitled to the equitable relief awarded them by the judgment in this case.

The trial court found specifically that plaintiff's improvements were worth $7,500; that the value of the use and occupation was $10,000; and that the value of the premises when taken by defendant was $2,485 —a total of $19,925. The court ordered the defendants to pay the plaintiffs $5,400, net, for the use and occupation, and $11,000 for the value of the land and improvements, a total of $16,400; for this amount judgment was entered in this case. The findings of the court and the judgment are sustained by substantial evidence. It is clear that the attempted cancellation of the contract was absolutely void, and that it was in full force and effect, and was so at the time of the commencement of this action, and still so remains.