Smith *et al. v.* Mills *et al.*

---

SMITH ET AL. *v.* MILLS ET AL.

[No. 17,650. Filed April 14, 1896. Rehearing denied June 16, 1896.]

VENDOR AND PURCHASER.—*Purchase-money.— Vendor's Lien.— Enforcement of by One Not a Grantor.—Contract.*—The holder of a contract for the purchase of real estate, capable of specific performance, who has it directly conveyed to a third person, may enforce a vendor's lien for unpaid purchase-money, due him from

the grantee, although at the time of such conveyance nothing had been paid on the contract to the vendor.

VENDOR'S LIEN.—*Right of, Not Lost by Assignment of Note.*—The right to enforce a vendor's lien against the maker of a note is not waived and lost by the assignment of such note.

From the Marion Superior Court.   *Affirmed.*

*N. M. ·Taylor,* for appellant.

*I. L. Bloomer,* for appellee.

HACKNEY, C. J.—On the 28th day of October, 1892, Charles E. Allender held the legal title to a house and lot in West Indianapolis, of which William J. Smith desired to become the purchaser, and sought the appellees, Mills & Small, with that object in view.   On that day the following writing was executed between said Mills & Small and said Smith:

"INDIANAPOLIS, IND., Oct. 28, 1892.

"Mills & Small:   I will give you for house No. 90 Division street, West Indianapolis, fifteen hundred dollars ($1,500.00), and will pay for the same as follows:   To assume mortgage on lot of $260.00 to N. McCarty, and one mortgage to building and loan association of $901.50, and give Billy Cook (horse) and carriage and harness, three promissory notes (my sale notes), due in nine months, amounting to $60.59, and I will give my notes for $153.00, payable at $20.00 per month; first note due in thirty days, and $20.00 every thirty days until the $153.00 are paid; these notes to draw six per cent. interest from date.   I to have possession on or before November 10, 1892.

"WM. J. SMITH."

"We accept the above proposition.

"MILLS & SMALL."

Thereafter the following writing was executed between Mills & Small and said Allender:

"INDIANAPOLIS, IND., Oct. 29, 1892.

"Mills & Small: I will sell you my house and lot, house No. 90 Division street, West Indianapolis, lot being 547 in McCarty's 11th west side addition to the city of Indianapolis, on the following terms: You to pay mortgage to Aetna Savings and Loan Association of $900.00, and one to McCarty of $250.00 and int., and you give me two $12.00 notes, due in nine months, on John Bradford and Anthony Hansing, endorsed by William J. Smith, and you give to me $26.00 in cash. The notes and cash making me $50.00 clear of all commissions. The cash and notes to be given me on Tuesday, 1st day of November, 1892.

CHARLES E. ALLENDER."

"We accept the above proposition.

"MILLS & SMALL."

After the execution of said two writings, and on the 29th day of October, 1892, William J. Smith executed his several notes for $153.00 to Mills & Small, and otherwise executed his part of the proposition so made by him, and Mills & Small procured Allender and wife to execute to Hester A. Smith, wife of William J. Smith, a deed of general warranty for said lot. Said deed being so executed, by the oral agreement of William J. Smith and Mills & Small, and in and by said deed the grantee assumed, expressly, the payment of said two mortgages.

Subsequently, Mills & Small paid to Allender $26.00 in money and made over to him the two notes of Bradford and Hansing, endorsed by Smith, for $24.00. The notes of William J. Smith, for $153.00 were assigned in blank to one Lipsey, who thereafter assigned them by endorsement to said Mills & Small, "without recourse" on such assignor.

Mills & Small instituted this suit upon said notes for $153.00 against William J. Smith, and to enforce against said lot a vendor's lien as to Hester A. Smith.

Upon the issues found below the court gave personal judgment against William J. Smith, and declared a vendor's lien as to the appellant, Hester A Smith. The only questions here presented are by Hester A. Smith, and they relate to the right of Mills & Small to maintain such lien.

It is first insisted, by counsel for the appellants, that Mills & Small, having paid nothing to Allender, at the time of the conveyance to Mrs. Smith, were not equitable owners of the lot and could not claim a vendor's lien. It is expressly conceded that they held such an obligation of Allender that they could have enforced specific performance, but this, it is said, does not constitute an equitable title. The cases of *Johns* v. *Sewell*, 33 Ind. 1.; *Dwenger* v. *Branigan*, 95 Ind. 221, and *Barrett* v. *Lewis*, 106 Ind. 120, are cited in support of this insistence. These cases hold, as we understand them, that one paying the purchase-money, upon a contract to convey to him or another, may maintain a lien as a vendor, but this is far from deciding that one holding a contract for a conveyance, upon terms to be performed after conveyance, must perform before conveyance to be enabled to sell his beneficial interest, the equitable title, and maintain a vendor's lien for the selling price. The effect of the writing between Allender and the appellees is conceded to be sufficient, upon its face, to create an equity in favor of the appellees, not only to enable them to have enforced a conveyance to them of the legal title, but also to constitute them the equitable vendors upon a conveyance by Allender to Mrs. Smith, by the mutual understanding of all the parties, if they had theretofore paid Allender the purchase-price.

Presuming, as we must, that the contract between Allender and the appellees was valid and, as the evi-

dence discloses, its terms were complied with by the appellees, we can see no reason for holding that Mrs. Smith is not their equitable vendee. Part of the agreed consideration for Allender's promise to the appellees was their promise to assume certain mortgages and prepayment of the small difference was not more essential than that they should have tendered their assumption as a prerequisite to the execution of his deed to them. The deed to Mrs. Smith executed the contract between Allender and the appellees, and she cannot say that their equity should be defeated because they had not prepaid the purchase-money, no more than she could complain that she got no title because the contract between Allender and the appellees was in parol, if it had not been in writing.

A disputed point, upon the evidence, was as to whether the appellees, at the time of their contract with and the execution of the deed to Mrs. Smith, were acting as the agents of Allender to make the sale, or were acting for themselves. We cannot pass upon the conflict in the evidence, and, therefore, find it unnecessary that we should determine whether parol evidence upon that subject was a contradiction of the written contract between them, or whether the appellant may take advantage of the fact that appellees' hands may have been soiled by taking an unfair advantage of their relations to their employer, Allender.

Nor is it material that appellees failed to make proof of the allegation in their pleadings that the conveyance to Mrs. Smith was designed by her and her husband to defraud the appellees in the collection of the purchase-money. Their case, it is conceded, was as strong without as with such allegations, and, in our opinion, the same is true upon the evidence.

The remaining proposition of the appellant is, that

if a lien had existed in favor of the appellees it was waived and lost by the assignment to them, by Mrs. Lipsey, without recourse upon her. Counsel concede that, in the absence of this restricted assignment the lien would have passed. In other words, that a general assignment of the evidence of debt carries with it the lien of the vendor. On the other side, it is conceded that any act indicating an intention, by the holder of such a note, that he does not rely upon the lien, is a waiver of the lien.

Briefly stated, does the holder of a note, who may enforce a vendor's lien, cut off the lien by assigning the note without recourse? Or, does the assignee, by accepting such limited assignment, waive the right to enforce such lien? Two cases cited by counsel for the appellant apparently sustain his proposition. *Smith* v. *Smith*, 9 Abb. Pr. (N. S.), 420, and *Schnebly* v. *Ragan*, 7 Gill & Johns. (Md.), 120, while *Neese* v. *Riley*, 77 Tex. 348, holds the other way.

In *Smith* v. *Smith, supra*, it was said: "When the vendor assigns the purchase-money debt, and continues to have a pecuniary interest in its payment, he does nothing manifesting an intention not to rely upon the lien. His interest to preserve it remains. But, when he assigns the debt in such manner and form as to have no further interest in its payment, and omits to assign the lien in terms, he manifests the intent that the lien is no longer to be relied upon; and that destroys it."

As to the Maryland case, we may say that the rule has been in that State that the assignment of the purchase-money note does not carry the vendor's lien to the assignee. *Dixon* v. *Dixon*, 1 Md. ch. 220; *Iglehart* v. *Armiger*, 1 Bland (Md.), 519; *Johns* v. *Sewell*, 33 Ind. 1 (p. 4). Whether this is the rule in that State at present, we do not inquire, but the fact that the rule

so thoroughly established in this State, that the lien does so pass, has been accepted in that State, if at all, with reluctance detracts from the strength of the case cited. The case of *Smith* v. *Smith, supra,* was by the Buffalo Superior Court, and is in line with the rule that an assignment of the debt by the vendor does not carry the lien. That New York is one of the States denying the rule that an assignment of the debt carries the lien, is stated in 28 Am. and Eng. Ency. of Law, p. 107, note 1; and *White* v. *Williams,* 1 Paige, 501. That the Indiana cases are in harmony in holding that the lien passes with the debt as an incident, and without special assignment, as has always been the case with reference to mortgage liens, collateral guarantees, and pledges, see *Lagow* v. *Badollet,* 1 Blackf. 416; *Johns* v. *Sewall, supra; Nichols* v. *Glover,* 41 Ind. 24; *Felton* v. *Smith,* 84 Ind. 485; *Lowry* v. *Smith,* 97 Ind. 466; *Otis* v. *Gregory,* 111 Ind. 504; *Upland Land Co.* v. *Ginn,* 144 Ind. 434. By reference to these cases it will be seen that the lien of a vendor, in respect to its following the debt, has been treated exactly as the lien by a mortgage.

Concerning the rule that the lien should be looked upon with doubt and suspicion, this court has said: "We have no temptation    *    to hedge in the conceded right with limitations which greatly tend to impair its utility and value, and which, it seems to us, sets at nought some very plain rules which are uniformly applied in analogous cases. The incident generally follows the principal thing, and in all other cases that now occur to us the security is carried by the transfer of the debt." *Johns* v. *Sewall, supra.*

In the case of *Nichols* v. *Glover, supra,* it was held that, where the purchase-money notes were not made to the vendor, but were made directly to his creditor in satisfaction of his debt and, necessarily, leaving no

Smith *et al.* v. Mills *et al.*

pecuniary interest or obligation on the part of the vendor to keep alive the lien, the lien was not lost or waived, and that equity would protect and keep it alive for the benefit of the creditor.

In *Nutter* v. *Fouch*, 86 Ind. 451, it was held that the equitable lien of the vendor is not waived or lost by proceeding, through his legal remedy, for the collection of the debt.

In the present case, the vendors, Mills & Small, indicated no intention of relying upon other security, or in any other manner waiving their equitable lien by the endorsement made by them, nor can we observe any such intention manifested by the acceptance of the notes from Mrs. Lipsey. Did her limited endorsement cut off or affect the lien? It did not affect the debt, and if it affected the incident, the lien, it certainly could not have been in the form or the affect of the assignment. If the assignment had been by the mere endorsement of her signature, her liability would have been that of an endorser, she would have warranted the liability and ability of the maker to pay the notes. The effect of the endorsement made was simply to negative any liability as endorser. It transferred the note as effectively as an endorsement in blank, but it warranted nothing. True, it left no pecuniary interest in her to maintain the lien, but it did not give the appellees any security, nor did it impair the liability or standing of the appellant, and we certainly do not observe how the appellees, by accepting a return of notes, waived the lien which equity created, in the first instance, for their protection. The appellant appeals to equity with little grace in saying: "I have the property and have paid nothing for it; you hold the consideration notes, but I will not pay them, because you have no recourse to a personal claim

against your endorser." Whatever the rule, in states
where an assignment of the purchase-money notes
does not carry the vendor's lien, we cannot sanction a
rule so devoid of equity where, as in this State, the
lien does pass with the debt, and where it is not looked
upon with such disfavor as in some jurisdictions.

Finding no error in the record, the judgment is
affirmed.

### On Petition for Rehearing.

Hackney, J.—Counsel for appellant has presented
an able argument in support of the petition for a re-
hearing, urging that we were in error in holding that
Mrs. Smith occupied the relation of vendee to Mills &
Small, when they had paid no part of the purchase-
price to Allender, and when, as claimed for her, they
held no equity in the property at the time it was con-
veyed by Allender to her. It was not our purpose, as
supposed by counsel, to place our holding upon the
ground that Mills & Small could have enforced
specific performance, under their contract with Allen-
der, without complying with the terms of the contract
on their part. We understood counsel to concede
that they could have enforced their contract, upon
compliance with such terms and we employed that
concession to demonstrate the existence, in the appel-
lees, of an equity in the property. If, however, it were
error to hold that Mills & Small, before the convey-
ance, held an equitable estate in the property, they
not then having paid the agreed consideration to
Allender, there is little room for the contention that,
having paid the consideration and having stood in the
relation of vendor to Smith, while Allender was but
Smith's grantor, who looked alone to, and received
from and through the appellees the only consideration

paid to him, that appellees, by the entire transaction, were not the equitable vendors of Mrs. Smith.

There may be a clear distinction between a grantor and a vendor, and this transaction illustrates the distinction. As said in *Russell* v. *Watt, Admr.,* 41 Miss. 602, 93 Am. Dec. 270: "A *grantor* is one who gives, bestows, or concedes a thing, and in legal parlance is understood to be the party who makes and executes a deed or conveyance. A *vendor* is a seller; a person who disposes of a thing for money." A vendor's lien may be enforced by one who is not a grantor. *Russell* v. *Watt, supra; Holloway* v. *Ellis,* 25 Miss. 103; *Stewart* v. *Hutton,* 3 J. J. Marsh. (Ky.) 178; *Ligon* v. *Alexander,* 7 J. J. Marsh. (Ky.) 289; *Davis* v. *Pearson,* 44 Miss. 508; *Anderson* v. *Spencer,* 51 Miss. 869.

In *Russell* v. *Watt, supra,* Mrs. Russell claimed to be the owner by gift, but without a deed, for the land in question. She sold the land and procured a deed to be made to her vendee from the party holding the legal title. It was said in that case, that after receiving the conveyance and becoming indebted to the vendor for the purchase-price, "He is precluded from going behind it, nor can any person claiming under him inquire whether the original parol gift from Booth to Mrs. Russell could or would have been enforced as against the donor, had he refused performance. * * * It is immaterial, so far as the present controversy and parties are concerned, whether her title was a legal or an equitable one, as this was a question exclusively between the father and daughter, which was not made at a time when it could have been urged, and now that the gift from Booth has been carried out and perfected in good faith, and the contract from Russell and wife to Moore has been completely executed, it is impossible to raise the question—it would be useless folly to discuss it."

Mills & Small were the vendors of Mrs. Smith; they paid the purchase-money to Allender; they took the obligation sued on as representing the purchase-money from Smith; the transaction was completed according to the terms of the two contracts; Allender conveyed to Mrs. Smith simply as a short method of passing to her the title he had sold to the appellees; the transaction was not between Smith and Allender. The deed having been executed for the appellees, pursuant to their contract of purchase, they having paid him the agreed price, and they having discharged their obligation to Smith, it matters very little what would have been the result of actions for specific performance if Allender had failed to convey. Mrs. Smith obtained the title purchased by the appellees, and it has never been paid for. Good conscience demands a lien for the purchase-money.

We are confirmed in the view originally taken. The petition is overruled.