## JAMES J. EARLEY and Walter Coop, Appellants, v. W. H. FRANCE, Respondent.

### (172 N. W. 73.)

**Bills and notes — transfer of — passing of vendor's lien.**

1. Where negotiable promissory notes are made, evidencing payments stipulated in a contract for a deed for the purchase price of land, such notes are the principal obligation and the contract, evidencing a lien, the incident thereto, and upon the transfer of such notes, or a part thereof by the vendor, the contract evidencing such lien, passes *pro tanto* as an incident therewith.

**Same — right of vendor.**

2. The vendor in such contract cannot both cancel and rescind such contract and enforce payment upon such notes.

**Same — rights of assignee of transferee.**

3. Where a portion of such notes, so given, has been transferred by the

vendor to one who has, in turn, surrendered his equity in the land involved to the vendor, even though so done through negotiation theretofore had with the vendee, and has agreed in a contract that the vendor may enforce a default against the vendee for such notes so given for his equity, the assignees of such person, taking with full notice, cannot enforce an action upon such notes, after the vendor has declared a default and rescinded such contract.

Opinion filed March 28, 1919. Rehearing denied April 15, 1919.

Action on two promissory notes, in District Court, Barnes County, *Coffey, J.*, from a judgment rendered for defendant, and from an order denying judgment *non obstante* or for a new trial, plaintiffs appeal.

Affirmed.

*Winterer, Combs, & Ritchie,* for appellants.

It is a well-settled principle of law that where the maker of commercial paper voluntarily places his paper in the hands of another for negotiation, or who stands by and sees the note indorsed to a party without having his right to defend against the payment of the notes indorsed thereon, or where a failure of the consideration complained of is occasioned by his noncompliance with his own agreement or obligation, he is estopped from defending against the notes when suit is brought on them by the purchaser or holder for value on the ground of failure of consideration. 8 Cyc. p. 64, note B. See also Auten v. Manistee National Bank, 57 Ark. 243, 47 L.R.A. 329, 54 S. W. 337; Yeomans v. Lane, 101 Ill. App. 228; Firman v. Blood, 2 Kan. 496.

*C. S. Buck,* for respondent.

There is no way that France could prohibit the bank from buying these notes, and the only duty that he owed to the bank was to see that it had full knowledge of the transaction, and what the consideration for the notes actually was. 8 C. J. pp. 747, 748.

The defense of failure of consideration is available against the holder of paper who is not a holder in due course. Ibid.; Earl v. Stump, 13 N. W. 701.

When the holder of a land contract exercises his option and cancels the same for the failure to make payments by the vendee he waives all of his right to recover upon the debt. Warren v. Ward, 97 N. W. 886; Roney v. Halvorson, 29 N. D. 13.

When the land contract was canceled by Mr. R. B. Beeson, it was

canceled for the benefit not only of himself, but for the benefit of all his cotenants. 38 Cyc. p. 40.

BRONSON, J. This is an appeal from judgment rendered in the district court of Barnes county upon a verdict for the defendant, and from the order of the trial court denying a motion for judgment *non obstante,* or for a new trial. In the district court two actions were submitted upon the same evidence and separate verdicts returned by the jury. The Bank of Sanborn is the plaintiff in one of the actions, and the appellants herein, the plaintiffs in the other. In the action brought by the Bank of Sanborn a verdict was rendered in its favor. In substance the record discloses the following facts: One Beeson, a resident of Wilkin county, Minnesota, has been engaged in the real estate business for some twenty-five years. He had a contract for a deed from one Porter covering 320 acres of land in Wilkin county, Minnesota. On October 29, 1912, he made a contract for a deed concerning this land with one Deree, of Kandiyohi county, Minnesota, for an expressed consideration of $9,920. Deree paid him on this contract $2,000. On July 9, 1914, Deree made a written contract with Beeson which recited therein that Deree desired to sell and transfer to Beeson his interest in such lands so that Beeson could sell the same under a contract for a deed to the defendant, France, who agrees to deliver to Beeson a stock of merchandise valued at $3,500, which amount is to be credited as payment on Deree's interest in the lands; that Deree's interest in the lands, after deducting the price of such merchandise, is $2,480, less the amount that was owing to Beeson on the contract and other indebtedness. That under a contract for a deed made between Beeson and France on the same date for the sale of such lands, there were three notes signed by the defendant payable to Beeson,—one for $800, due on or before November 1, 1915; one for $800, due on or before November 1, 1916; and one for $880, due on November 1, 1916, evidencing payments to be made on such contract. That it was agreed that Deree should sell to Beeson his interest in such lands and surrender to Beeson his contract therein, in consideration of which Deree was to receive from France the stock of goods, and also the three notes above mentioned for the balance of his equity in the lands; such notes to be indorsed by Beeson without recourse; and such notes further to be held by Beeson as security for the payment of his indebtedness. That it was further

agreed that in case the notes in question were not paid when due Beeson should use his best endeavors to collect the same under his contract for the deed.

On the same day, July 6, 1914, Beeson entered into a contract for a deed with the defendant, France, whereby he agreed to convey to the defendant the land involved for an expressed consideration of $14,400 to be paid as follows: $500 in cash; $3,500 through a stock of merchandise; $1,800 on or before November 1, 1915; $1,800 on or before November 1, 1916; $1,880 on or before November 1, 1917, and $4,920 on November 1, 1918, with interest at 6 per cent payable annually. The three payments of $1,000 and $1,880, respectively, were to be evidenced by six notes for $1,000 and $800, and $1,000 and $880, respectively, made by said defendant, France, payable to Beeson. It was further agreed in this contract that Beeson had a contract for a deed from one Porter and was to get proper conveyance from Porter. In connection with these contracts some preliminary negotiations were had between the defendant, France, and Deree. Deree had this land under such contract; France had his stock of goods at Sanborn. Some sort of an agreement was signed with reference to an exchange. The written agreement was not introduced in evidence; witnesses testify that it provided that Mr. Deree was to take over the stock of merchandise and the defendant, France, to take the land in Minnesota with the provision that the agreement should not be binding unless the real estate in Minnesota proved to be as represented, and also that the defendant, France, should go down and look at the land, and if the deal did not go through he was to receive his expenses if the land was not as represented; the defendant then went down the same evening to see the land in Minnesota. He found out that Deree had a contract for the land with Beeson. While in Minnesota he went to Beeson's office and there signed a contract for a deed, which he testifies was on July 11, 1914. While there he paid Beeson $450 by check and delivered a bill of sale of his stock to Deree. At the time the defendant made and delivered to Beeson the promissory notes; namely, two for $800, and one for $880, and the promissory notes for $1,000 each, mentioned in the contract.

On the next day France, Mr. Deree, and a son of Mr. Beeson returned to Sanborn. Beeson testified that it was not a fact that Deree was to receive the three notes in question so that he could raise money

by using such notes and pay Beeson what he owed before Beeson was willing to enter into the contract with France. Further, that his son took the notes to Sanborn for the reason that Deree thought he could get money on the notes sufficient to pay Beeson what he owed him at that time on an outside matter. He further testified that France said to Deree that his note was good at the Bank of Sanborn, and that such bank would take his notes. Deree and a son of Beeson came to Sanborn and Deree there sold one $800 note to the bank and borrowed $1,100 upon his own note by putting up the other two notes with such bank as collateral security. The bank had knowledge of this entire transaction concerning these contracts for a deed. Later, the two notes put up as collateral security were transferred by the bank to the plaintiffs herein, who were directors of such bank. The defendant, France, paid $164.70 interest on such contract up to November 1, 1914. He did not, and was unable to, make further payments. Thereafter proceedings to cancel the contract for a deed were initiated by Beeson by notice thereof dated November 30, 1915. Such notice was served upon the Bank of Sanborn and on the defendant, France, and upon Deree during the first week of December, 1915. Prior to that time, on November 8, 1915, the bank commenced action on the notes so purchased, and at the same time caused a warrant of attachment to be issued. Later, on September 26, 1916, the appellants herein instituted action against the defendant upon the other two notes not then due, and caused a warrant of attachment to be issued, alleging in their complaint that the action was so commenced before the debt became due for the purpose of obtaining an attachment against the property of the defendant. The defendant in his answer to the complaint of the plaintiffs set up a failure of consideration and that the defendant was not indebted to said Beeson or any of his assigns on said notes. The evidence shows that these two notes involved herein were taken over by the appellants apparently still as collateral notes to the indebtedness of Mr. Deree of the $1,100 note which was a demand note.

The appellants challenge, by specifications of error, the judgment and order of the trial court, principally upon the ground that the evidence is insufficient to support the verdict, and that under the instructions given by the court to the jury it was possible for the jury to render a verdict for the defendant even though the defendant knew at the time he made

the notes that they were to be used for the purpose of paying Deree for his equity in the land, and though they were in fact used for such purposes.

Upon this record, it is clear that Beeson could not recover upon these notes if action had been brought by him; such notes are simply evidences of the purchase price to be paid in accordance with the payments stipulated in the contract. The purchase price to be paid is the principal obligation; the contract for the deed is incident thereto. Although the vendor holds the legal title to the land through the contract it is nevertheless in the nature of a lien to secure the purchase price stipulated. Woodward v. McCollum, 16 N. D. 49, 111 N. W. 623, and cases cited. The vendor may either enforce the same upon the covenants therein to pay through specific performance, or he may declare a forfeiture and rescind the contract under the express terms thereof. He cannot both enforce the contract and rescind the same. As stated in Warren v. Ward, 91 Minn. 254, 94 N. W. 886, "There is no difference in the authorities upon the proposition that one cannot have the specific performance of the contract and its rescission. This is but the application of the very hackneyed truism that 'one cannot have his cake and eat it.' "

The main proposition involved in this case is the question whether Deree and the appellants are placed in the same position legally as the vendor, Beeson, or whether the defendant, France, gave these notes in question as a direct consideration for the equity of Deree in the land covered by the contract.

If, in fact, France had executed these notes direct to Deree, and Deree had assigned his contract with Beeson to France, the foreclosure of the contract by Beeson would not in any way affect the liability of France to Deree upon his notes made to Deree. This, however, in our opinion, is not the legal situation which was so expressly created between the parties. Deree had an equity in this land, its value was $2,480. Instead of turning this equity over to France, he turned it over by his own contract shown in the evidence to Beeson; he surrendered his contract to Beeson. Beeson assumed, therefore, both the legal and equitable title that Deree formerly had. Beeson then made his contract with France, and although there was credited on this contract the amount of such equity to Deree to the extent of $3,500, the stock of

goods turned over, nevertheless this equity, as to the title therein, and as to Deree's equity represented by the notes, was retained by Beeson, and the contract made with Deree specifically provided that Beeson might declare a default and rescind the contract for failure to pay the very notes which France gave and Deree received. Furthermore, in the contract with France, Deree authorized Beeson to collect on such notes through such contract so made by Beeson to France. Beeson indorsed these notes to Deree; Deree put them up as collateral security with the bank; the bank turned them over to the appellants. All of the parties have notice of this entire transaction. In legal effect, therefore, the situation is just the same as if Beeson in fact had purchased Deree's equity, and had assumed the same and had made a direct bargain himself with France concerning it. The fact that France gave a bill of sale of the stock to Deree does not alter the situation. The contract provided that such stock should pass to Beeson. The situation is just the same as if France had turned over $3,500 to Beeson and Beeson had turned over the same $3,500 to Deree for his equity.

Furthermore, upon this legal situation, when Beeson indorsed the transfer of these notes to Deree, the transfer of the same operated to assign pro tanto the security which was incident thereto, or at least the right to enforce as an assignee an assignee's right in such security. 39 Cyc. 1810; 2 R. C. L. p. 633; 5 C. J. 951; Smith v. Mills, 145 Ind. 334, 43 N. E. 564, 44 N. E. 362. See Funk v. Voneida, 11 Serg. & R. 110, 14 Am. Dec. 621; Terry v. Woods, 6 Smedes & M. 139, 45 Am. Dec. 277.

Deree was not satisfied to turn his equity in the land over to France and take the notes; he wanted further the security of the contract that Beeson had. He directly authorized Beeson, impliedly at least, to make collections and to enforce default for failure to pay these very notes. Neither in law nor in equity is he entitled to have both his equity, now, in the face of the record, in Beeson's hands, who was authorized to collect his obligations, and also his money. If it be argued that this holding serves to permit the defendant to take advantage of his own default, the answer is that Deree should not be entitled to take advantage twice of defendant's default.

The fact that France knew that Deree was surrendering his equity is no reason why Deree should be permitted either in law or in equity to

recover back through Beeson both the land and his money. The appellants stand in no better position than Deree; they received the notes with full notice, and are maintaining this action apparently as holders of these notes put up as collateral security.

The notes as such were subject to the same defense as if they were non-negotiable. Comp. Laws 1913, § 6943. Deree was not a holder in due course; the appellants were not holders in due course. Comp. Laws 1913, § 6937.

The notes, therefore, were subject to the defense that there existed, at the time this action was instituted, no obligation therefor, and that the contract covering the same had been rescinded. This was set up in the answer, and the record shows that the instructions of the trial court were favorable, rather than otherwise, to the appellants, and that the verdict as rendered by the jury is proper. The judgment is affirmed with costs to the respondent.

GRACE, J., concurs.

ROBINSON, J. (concurring specially). The plaintiff brings the action to recover on two promissory notes dated July 9, 1914, made by defendant to R. B. Beeson and by him indorsed, without recourse, to Deree, and by him transferred thus:

Louie Deree.
For value received I hereby sell and assign to ———————— all my right, title, equity and interest in and to the within note and the debt evidenced by it.                    Louie Deree.

One note is for $800 and the other for $880. About the date of the notes they were given to the Bank of Sanborn as collateral security for $1,100. The plaintiffs are bankers and own the Bank of Sanborn and took the notes to bring suit on the same in their own name. The defense is a total failure of consideration.

As it appears, R. B. Beeson, of Breckenridge, Minnesota, is a real estate trader,—of skill and long experience. In July, 1914, he was the owner of E½ sections 1–134–57, in Wilkin county, Minnesota. He was the owner under L. B. Porter. He had contracted to sell the same to

Deree, who had paid $2,000 on the contract. On July 9, 1914, having arranged to take up the Deree contract, Beeson made a written contract to sell the land to France for $14,400; $500 to be paid in cash, $3,500 by a stock of goods, and the balance in promissory notes. For his equity in the land Deree received the stock of goods and the note in question. France paid $500 cash. He paid interest, $146.70, and turned over the stock of goods. Then he made default and in January, 1916, Beeson canceled the contract, leaving France to charge to expense or profit and loss $4,146.70, which he had paid. Now the notes in question were given to Beeson as a part of the land contract, and to secure each of said notes he retained a vendor's lien on the land just the same as if the land had been mortgaged to secure the notes, and if he transferred a note he transferred the lien securing the same, and such lien was in no manner affected by the cancelation of the contract. Were it otherwise, then by transferring all the notes, except the very smallest one, and then canceling the contract, Beeson might hold and retain both the land and its price. The cashier of the bank had full notice and knowledge of all the particulars relating to the notes and the land contract, and that was notice to the plaintiffs, who owned the bank. And aside from that, Mr. Early testified that, long before taking the notes, he and Coop had full knowledge of the contract. (15) They knew that the notes were taken as a part of the land contract. Hence, their remedy is to enforce the vendor's lien, or by suit against Beeson if he has impaired the lien by conveying the land to a good-faith purchaser. Certainly neither the plaintiff nor Beeson are in any position to ask this court to aid them in further plundering the defendant.

Judgment affirmed.

BIRDZELL, J. I dissent, and reserve the right to file the reasons within the time allowed for a petition for rehearing.

BIRDZELL, J. (dissenting). The statement of facts contained in the main opinion in this case is so framed that it appears to obscure the real transaction. As I read the record in this case, the main transaction and the one involved here was between Deree, who held the land under contract under which he had paid $2,000, and France, who purchased it from him. It is true that Deree held his contract from Beeson, and

that Beeson in turn held a contract from one Porter, but nevertheless *Deree sold to France* his interest in the land, which was a substantial one, and by mutual arrangement it was agreed that Beeson would hold the title which he might subsequently acquire from Porter as security for the deferred payments that were to go to Deree for his equity. .It is believed that a better understanding of the case may be had by referring to what is considered by the writer of this opinion to be a more correct statement of the transaction.

In the early part of July, 1914, the defendant France and one Deree entered into negotiations for a trade involving the transfer of some land in Wilkin county, Minnesota, to France for a stock of goods which was owned by the latter in Sanborn, North Dakota. A preliminary contract looking to the exchange of the lands, at $45 an acre, for the stock of goods, at the agreed price of $3,500, was drawn up by one Isansee, cashier of the bank of Sanborn, but the consummation of the deal was conditioned upon the land proving as represented. Immediately after the preliminary contract was made, the defendant France went to Breckenridge, Minnesota, for the purpose of inspecting the land, and upon arrival there he discovered that Deree did not own the land, but that he was purchasing it under a contract with one R. B. Beeson, who in turn held it under one Porter. The deal, according to the testimony of Beeson and the defendant, was completed within a day or two after arrival at Breckenridge, Minnesota; although it seems to be contended by the plaintiff that it was not consummated until the parties returned to Sanborn. At any rate, a contract was drawn up under which Beeson obligated himself to sell the land to France for $14,400, France turning over $500 in cash, his stock of goods at $3,500, and giving some notes representing the deferred payments. A separate contract was entered into between Beeson and Deree and witnessed by France, whereby three notes, one for $800, upon which the Bank of Sanborn has sued in a separate action, the two notes in controversy, and the stock of goods, were agreed to be turned over to Deree. Immediately after the execution of these contracts at Breckenridge, Deree, France, and a son of R. B. Beeson returned to Sanborn, the latter having possession of the three notes which were to go to Deree and which had been indorsed by his father without recourse. Deree arranged with Isansee, the cashier of the Bank of Sanborn, for the sale of one of the notes, and obtained a

loan of $1,100 for which the other notes were pledged to the bank as collateral.

With part of the proceeds of the notes, Deree paid some indebtednesses owed to Beeson on an outside matter. The notes in suit, being the collateral notes, were later transferred to the plaintiffs, who were officers of the Bank of Sanborn. There seems to be ample evidence that the plaintiffs had full knowledge of the character of the transaction in which the notes were given, and it is certain that the bank, through its cashier, had ample notice. France later defaulted in payments under his contract of purchase from Beeson, and the contract was foreclosed pursuant to a notice dated November 30, 1915.

This action and the action of the Bank of Sanborn v. France, post, 68, 172 N. W. 79, were tried under a stipulation that the evidence taken should suffice for both and that the jury should render separate verdicts.

In submitting the cases to the jury, the court gave the following instruction: "The plaintiff, the Bank of Sanborn, claims to have purchased this note from Louie Deree and claims that at the time of purchase the defendant knew that the plaintiff was about to purchase the same, and plaintiff claims that the defendant acquiesced and consented to the purchase of the note by the plaintiff. If you find that such was the case, then I instruct you that your verdict in this case should be for the plaintiff. The defendant denies this contention of the plaintiff, and it is a question of fact for the jury to determine from the evidence. As I have already stated, if the plaintiff has satisfied you by the greater weight of the evidence of its contention in this respect, then you should find for the plaintiff for the sum of $800, and interest at 6 per cent per annum from the 9th day of July 1914, to date, or such amount as the testimony shows due thereon. However, if you find that the defendant did not consent or acquiesce in the purchase of said note, then your verdict in this case should be in favor of the defendant."

The foregoing instruction was given with special reference to the note held by the Bank of Sanborn, but was also made applicable to the notes in suit by the following instruction: "Gentlemen of the jury, the same principles of law apply in this case as in the former one, which I will not reiterate. If, under the instructions already given in the former case, applying the principles there laid down to this case, then you should find in favor of the plaintiff for such a sum as you find due

and owing to the plaintiffs upon the two notes in question, otherwise you should find in favor of the defendant."

The appellants complain of the giving of the foregoing instructions on the ground that under them the jury could return a verdict for the defendant even though the defendant knew at the time the notes were given that they were to be used for the purpose of paying Deree for his equity in the land, and though they were in fact used for that purpose.

If it is the fact that the notes in question were given to compensate Deree for the sale of his interest in the land, then it is immaterial whether or not the defendant assented to or acquiesced in the purchase of the notes. The giving of the notes for this purpose would be but the consideration for the surrender by Deree in favor of the defendant of his interest in the land contract he held from Beeson, and this consideration is one that could not be said to have failed by reason of the failure of France to make subsequent payments that would entitle him to a conveyance from Beeson, and this would be true even though Beeson, upon France's default, subsequently foreclosed the latter's interest.

There is ample testimony in the case showing that defendant understood full well that the notes in suit were given as the consideration for Deree's relinquishment of his interest in the land. The defendant testified:

Q. You knew these three notes that have been referred to which had been or were to be delivered to Mr. Deree represented his equity in the land you purchased?
A. Yes, sir.
Q. That was talked over down at Breckenridge?
A. Yes, sir.
Q. You had full knowledge that Mr. Deree had this interest in this way?
A. Yes, sir.
Q. That is the reason the notes were drawn as described in the contract, one for $800 and the other one for $1,000—that is the reason that it was drawn up that way?
A. Yes, sir.
Q. So, Mr. Deree's interest could be delivered to him in that form?
A. Yes, sir.

Again on cross-examination, defendant testified as follows:

Q. Why were these notes made in six instead of three notes?

A. Why, I understood Mr. Deree that was his equity in the land.

Q. They were made in that way so that these notes, the two $800 and one $880 note, could be turned over to Mr. Deree as representing the balance of his equity in the land?

A. Yes, sir.

Q. And at the time you executed and signed these notes, Mr. France, you knew they were to be disposed of, that that was to be the disposition to be made of them?

A. That was his equity in the land.

Q. You knew these three notes as described, being a part of these payments to be made, were to be turned over by Beeson to Deree in payment of Deree's equity in the land?

A. Yes, his equity.

Q. You knew that Deree's equity in this land was to be paid out by taking over this stock of goods at Sanborn and by the taking of these three notes?

A. Yes, sir.

Q. That knowledge was yours before you signed the notes? That had been explained to you before you ever signed the notes?

A. Yes, it was explained before I signed the notes. He wanted the notes or security he was to have for that first contract.

Q. That was to be security to Deree?

A. Yes, sir.

Q. That was why it was put in the contract?

A. Yes, sir.

Q. But it was thoroughly understood to be turned over to Deree in payment of this equity you were trading for?

A. I didn't know what disposition they were to make of the notes.

Q. No, but you knew that Deree was to get them?

A. I knew he was to get them, yes.

Q. And at the time you signed them you had this knowledge?

A. Yes, sir.

The defendant testified not only that he knew that the notes in question were to be delivered to Deree for his equity in the land, with the

understanding that he (the defendant) was to take a direct contract from Beeson, but also that the stock of goods which he was trading was to be turned over to Deree, and that he understood from Deree before they left Sanborn that Deree expected to raise money upon the obligations that the defendant would execute in the purchase of this real estate. It appears, furthermore, that the defendant was a witness upon the contract entered into between Beeson and Deree at Breckenridge, Minnesota, in which it was expressly stated that the notes in suit and the stock of goods were to be transferred by Beeson to Deree in payment of Deree's interest, and that this contract was read to France before he witnessed it.

Under the defendant's own testimony his liability upon the notes is not, as a matter of law, dependent upon his acquiescence in their transfer; nor is it contingent upon his completion of the land contract which he entered into with Beeson. Furthermore, under the defendant's own evidence, he did acquiesce, and no other finding would be warranted. But the notes in suit represent the present consideration for an interest which was transferred to France through the surrender of Deree's contract with Beeson and the making of the new contract between Beeson and France. In short, defendant's own testimony shows conclusively that the consideration for the notes in suit has not failed.

Even accepting defendant's theory that there is a failure of consideration as between himself and Beeson, or, for that matter, as between him and Deree, and that the plaintiffs are chargeable with notice of the actual consideration upon which the notes were executed, it does not follow that the liability of the defendant is disproved. As a general proposition, knowledge of the consideration for a note is not notice of a subsequent failure thereof, nor is a transferee subject to a defense on that account. See 8 C. J. 509–518. This is so, even where the note contains on its face a statement of the consideration for which it is given, and where it appears that the consideration is to be enjoyed by the maker in the future. Even the statement of a future consideration does not put the indorsee upon notice of a subsequent failure thereof. Siegel, C. & Co. v. Chicago Trust & Sav. Co. 131 Ill. 569, 7 L.R.A. 537, 19 Am. St. Rep. 51, 23 N. E. 417. We see nothing in the instant case to take it out of the operation of the general rule. For additional

authorities on this subject, see 7 Cyc. 706, 948; notes in 29 L.R.A. (N.S.) 382; 33 L.R.A.(N.S.) 589; and 46 L.R.A.(N.S.) 864.

The evidence shows that the instruments in question were transferred as collateral security for a loan negotiated by Deree with the Bank of Sanborn, and that they were subsequently transferred to the plaintiffs. This transfer was made before the notice of cancelation was served by Beeson, and there is no evidence (though we regard this as immaterial) that either the plaintiffs or the bank knew at the time that the defendant had defaulted under his contract. We find nothing in the record to impugn the lien of the bank or the right of the plaintiffs as transferees to collect the pledged paper. It is true that in the contract between Beeson and Deree, of which France had knowledge and which he witnessed, Beeson obligated himself to use his best endeavors to collect the notes in suit under the contract for deed which he gave at the same time to France. But the existence of a contract between Beeson and Deree, whereby, as between them, the legal title to the land should be held by Beeson as security for the notes representing the purchase price of Deree's interest, does not, in our opinion, qualify the plaintiff's right to recover the consideration which, in reality, according to the defendant's own understanding, passed from him to Deree. Whether or not Beeson, had he remained the holder of the notes in suit in his own right, could recover upon them after foreclosing the land contract (2 Warvelle, Vendors, 2d ed. § 916), is a question that is not involved in this suit, and we express no opinion concerning it. To allow the defendant, however, to take advantage of his own default to defeat the notes in suit is to enable him to deprive the other party to the transaction (Deree) of the benefit of a trade which must be presumed, in the absence of evidence, to have been fairly made. The defendant's contentions, and the holding of the majority of the court, if carried to their logical conclusion, would enable him by his own default, not only to defeat the payment of the notes, but at the same time deprive Deree of whatever money he had invested in the land under his preexisting contract. Deree has no escape from this consequence. His equity is gone and Beeson is under no obligation to him, as intimated by the majority; for he has faithfully performed his contract with Deree by using his best endeavors to collect the notes under his contract with France. It was not incumbent on Deree, upon France's default, to

step in and make the payments in France's stead, at the peril of losing the benefit of his bargain. In fact to so hold operates in itself to deprive him of his bargain without any cause whatever; for it requires him to perform the very contract by which his own profit is measured. We confess our inability to see any justification for a holding that results as above. It seems clear to us that the only effect of the failure of Deree, the plaintiffs, or the bank to relieve France's default would be the loss of the security, and not the loss of the primary obligation itself.

It must be borne in mind that the defendant claims no right to rescind the sale as against Deree, and that under the contract he was vested with the right to possession, and became the equitable owner. As such, he was entitled to any increment of value and to whatever other advantages attached to ownership. Where such rights pass, even under a conditional contract for the sale of chattels, it is held in some jurisdictions that the destruction of the property before the passing of the title does not deprive the vendor of the right to collect the agreed price.

Tufts v. Griffin, 107 N. C. 47, 10 L.R.A. 526, 22 Am. St. Rep. 863, 12 S. E. 68; Williston, Sales, § 304; Mitcherson v. Dozier, 7 J. J. Marsh. 53, 22 Am. Dec. 116. This principle applies with greater force where the defendant's loss is attributable directly to his own breach of contract.

By § 6912 of the Compiled Laws of 1913, it is expressly provided that where the holder has a lien on the instrument arising either from contract or by implication of law, he is deemed to be a holder for value to the extent of his lien. Under § 6936, Compiled Laws 1913, every holder of an instrument is given the right to sue thereon in his own name, and all that is necessary to constitute one a holder is that he shall be a payee or indorsee in possession, or, in case of instruments payable to bearer, that he shall be the bearer. Comp. Laws 1913, § 7075. Whatever might be the application of § 6913, Compiled Laws 1913 (to the effect that absence or failure of consideration is a matter of defense as against any person not a holder in due course) if the instruments in question were being enforced by Beeson after the foreclosure of the land contract, we are satisfied that it has no application where, as in the case at bar, the action is brought by one who has in good faith advanced money on the strength of notes fair on their face and which represent an

agreed purchase price, of an interest in property bought by the defendant,—and interest he would still own were it not for a loss incident to his own breach of contract. As we view the record, there is no evidence which tends to impugn the title of the plaintiffs.

The holding of the majority not only runs counter to the whole theory upon which the case was tried below, and presents as an absolute defense a matter that was not urged as such a defense, but it contradicts what seem to us to be well-established, controlling legal principles. If the holding of the majority is correct, it would follow logically that one taking a secured note, with knowledge that it is secured, would be chargeable with any personal defenses that might subsequently arise on account of the manner in which the security is dealt with by the original payee. If absolute promises to pay money in the shape of negotiable instruments, which are given even an additional element of currency by the fact of being secured, are thus rendered subject to conditions inherent in the original transaction, it is manifest that new and artificial precautions will have to be taken in dealing with commercial paper.

I am authorized to say that Mr. Chief Justice CHRISTIANSON fully concurs in all that is said in this dissenting opinion.